· (No. 13822.—Decree affirmed.)

H. WEDESWEILER *et al.* Appellees, *vs.* EDWARD J. BRUN-DAGE, Attorney General, *et al.* Appellants.

*Opinion filed April 5, 1921.*

1. BANKS—*banking business is subject to statutory regulations for protection of public.* In the absence of a statute the right of an individual to engage in the banking business in all or any of its departments is unrestricted, but the business is of a public character and is properly subject to statutory regulations for the protection of the public.

2. SAME—*section 15½ of revision of the Banking law embraces subject not mentioned in title of act.* While it is within the scope of the ordinary functions of a bank to deal in foreign exchange and money, an individual who is engaged in the business of transmitting money to foreign countries and buying and selling foreign money but does none of the other things distinctively characteristic of a bank is not a banker, and in so far as the provisions of section 15½ of the revision of the Banking law (Laws of 1919, p. 235,) apply to such business they embrace a subject not mentioned in the title of the act.

3. SAME—*when an individual is not engaged in banking business.* An individual is not engaged in the banking business because he does some of the things which are frequently or usually done by banks, such as loaning money and taking bonds and mortgages therefor.

4. SAME—*what corporations are not within title of act relating to banks and banking.* Brokerage corporations, collection agencies and mortgage loan and trust companies are not bankers merely

because a certain branch of the business which they transact is frequently done by banks, and a statute which by its title refers to banks and banking, only, cannot apply to such companies, although it may regulate such business when conducted by banks.

5. SAME—*section 15½ of revision of Banking law violates constitutional provisions.* The provision of section 15½ of the revision of the Banking law (Laws of 1919, p. 235,) prohibiting any natural person, firm or partnership from engaging in the business of transmitting money to foreign countries or buying and selling foreign money, except express, steamship and telegraph companies, violates the provision of section 22 of article 4 of the constitution against special privileges, and since it unlawfully prevents such persons or firms from engaging in a lawful business and denies them equal protection of the laws it violates section 2 of article 2 of the constitution and section 1 of the fourteenth amendment to the Federal constitution.

6. CONSTITUTIONAL LAW—*privilege of engaging in lawful business is subject only to the police power.* The privilege of engaging in any lawful business is the right of every individual, of which no one can be deprived except by a general law acting equally on all individuals in the same situation, but the business must be exercised in accordance with the requirements of statutes passed in the exercise of the police power for the protection of the public.

7. SAME—*a classification must be based upon a reasonable difference.* A classification used as a basis for legislation regulating business does not violate the constitutional provision against granting special privileges provided a reasonable distinction exists which has a just relation to the object to be accomplished by the statute, but a merely arbitrary classification cannot be sustained.

APPEAL from the Circuit Court of Cook county; the Hon. KICKHAM SCANLAN, Judge, presiding.

CLARENCE N. BOORD, MORTIMER C. GROVER, and GEO. C. BLISS, for appellants.

CHARLES S. DENEEN, and JAMES P. PIO, for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

The Fifty-first General Assembly passed and the Governor approved an act entitled "An act to revise the law with relation to banks and banking," and at the general election in 1920 it was submitted to a vote of the people

and approved by a majority of the votes cast for or against the law, as required by section 5 of article 11 of the constitution, and thereupon became effective. Section 1 provides that it shall be lawful to form banks and banking associations for the purpose of discount and deposit, buying and selling exchange and doing a general banking business, excepting the issuing of bills to circulate as money, and such banks or banking associations shall have the power to loan money on personal and real estate security and to accept and execute trusts. Section 15½ is as follows:

"Sec. 15½. After January 1, 1921, no natural person or natural persons, firm or partnership shall transact the business of banking or the business of receiving money upon deposit, or shall use the word 'bank' or 'banker' in connection with said business or shall transact the business of transmitting money to foreign countries or buying and selling foreign money or receiving money on deposit to be transmitted to foreign countries provided that express, steamship and telegraph companies may continue their business of transmitting money and receiving money to be transmitted: *And provided, further,* that nothing herein contained shall be construed to prohibit banks incorporated under the laws of this State or of the United States from appointing natural persons as agents to receive deposits of savings in and through the public schools. Any person or persons violating this section shall be deemed guilty of a misdemeanor, and shall, upon conviction thereof, be punished by a fine of not more than one thousand dollars ($1000) or by imprisonment in the county jail for not more than one (1) year, or by both such fine and imprisonment, and the Attorney General or State's attorney of the county in which any such violation occurs may restrain such violation by a bill in equity to be filed in the circuit court of such county." (Laws of 1919, p. 235.)

A bill was filed in the circuit court of Cook county by more than fifty complainants engaged in the business of

transmitting money to foreign countries and of buying and selling foreign money in this State, against the Attorney General and the State's attorneys of the counties of Cook and Will, for an injunction against their threatened enforcement of that part of section 15½ prohibiting the transaction of such business by a natural person or natural persons, firm or partnership, and for a decree that so much of section 15½ as prohibited such business to such persons is in violation of the constitution of this State and of the United States. The defendants appeared, demurred to the bill, and their demurrer having been overruled, elected to abide by it. The court entered a decree restraining the defendants from the enforcement of the provision of section 15½ complained of, against the complainants, and the defendants appealed.

The sections of the State constitution supposed to be violated are sections 13 and 22 of article 4 and section 2 of article 2. Section 13 of article 4 requires that no act shall embrace more than one subject and that shall be expressed in the title. The subject of the act in question expressed in the title is the revision of the law with relation to banks and banking. The appellees' contention is that the business in which they are engaged of transmitting money to foreign countries and of buying and selling foreign money is an entirely separate and distinct business from the business of banking and therefore does not come within the title, by which the provisions of the act are limited to banks and banking. The bill alleges that the business of transmitting money to foreign countries and buying and selling foreign money is an entirely separate and distinct business from the business of banking and receiving money upon deposit and from time immemorial has been carried on by natural persons, firms and partnerships; that none of the complainants are intending to receive any money on deposit or have used or are intending to use the word "bank" or "bankers" in connection with their business, but

that they have been engaged for many years in transacting
the business of transmitting money to foreign countries and
of buying and selling foreign money; that the business of
transmitting money to foreign countries has been done in
either of two principal ways, which are the uniform meth-
ods in use throughout the world for many years by all per-
sons transmitting money to foreign countries.   By the first
method a certain amount of United States money is deliv-
ered to the transmitter, for which he gives a receipt and
agrees to have a certain amount of foreign money paid to
the designated payee.   The transmitter then directs one of
the large financial institutions, either in this country or in
a foreign country, with which he has established connec-
tions, to pay the agreed amount of foreign money to the
designated payee, and said financial institution pays the
money to the payee, takes his receipt and returns it to the
transmitter.   By the second method the transmitter issues
a draft directly to his client on a bank in such foreign city
as the client desires, drawing against the transmitter's own
account, if he has one in that country; if not, he protects
the payment of the draft by his arrangements and estab-
lished connections with the large financial institutions which
have been mentioned.

In the absence of a statute the right of an individual
to engage in the banking business in all or any of its de-
partments is unrestricted.   It is universally recognized,
however, that the business is of a public character and is
properly subject to statutory regulations for the protection
of the public.   The inquiry here is not whether the business
of the appellees in question may be regulated by statute,
but is whether it can be regulated by a statute which by
its title purports to regulate banking, only.   In *Reed* v. *Peo-
ple,* 125 Ill. 592, in discussing the meaning of the words
"banking powers," as used in section 5 of article 11 of the
constitution of 1870, the court said:   "We think the lan-
guage employed should be used in its common, ordinary

sense, and when this is done the banking powers referred to mean such as are ordinarily conferred upon and used by the various banks doing business in the country. The ordinary and usual powers exercised by banks are to discount notes and receive deposits. They may, and often do, possess other powers, but these are the ordinary and usual powers conferred upon and exercised by banks and bankers. Bouvier, in defining a bank, says: 'A place for the deposit of money; an institution (generally incorporated) authorized to receive deposits of money, to lend money and issue promissory notes, (usually known by the name of bank notes,) or to perform some one or more of these functions.' 'Banks are said to be of three kinds: deposit, discount and circulation.' (See, also, *People* v. *Doty,* 80 N. Y. 225; *Pratt* v. *Short,* 79 id. 437.) Speaking in a commercial view, Bouvier is doubtless correct in his definition of a bank; but one of the chief characteristics and one of the most essential elements of a bank, as that term is ordinarily understood, is that it is a place for the deposit of money. The powers and functions of a bank are well stated in *Oulton* v. *Savings Institution,* 17 Wall. 117, as follows: 'Banks, in the commercial sense, are of three kinds, to-wit: First, of deposit; second, of discount; third, of circulation. Strictly speaking, the term 'bank' implies a place for the deposit of money, as that is the most obvious purpose of such an institution. Originally the business of banking consisted only in receiving deposits,—such as bullion, plate, and the like,—for safe keeping until the depositor should see fit to draw it out for use; but the business in the progress of events was extended, and bankers assumed to discount bills and notes, and to loan money upon mortgage, pawn or other security, and at a still later period to issue notes of their own, intended as a circulating currency and a medium of exchange instead of gold and silver. Modern bankers frequently exercise any two, or even all three, of those functions, but it is still true that an institution

prohibited from exercising any more than one of those functions is a bank, in the strictest commercial sense.' "

In *Hinckley* v. *City of Belleville,* 43 Ill. 183, it was held that "without considering the question as to how far a banker and a money-broker are the same in the common parlance and business usages of this State, there is at least no doubt that the term 'banker' includes all the business of a money-changer. A money-changer is defined by Webster to be 'a broker who deals in money or exchanges.' The word has passed out of common use, but when used we understand it in the sense given by the learned lexicographer. Thus defined, it is certainly included in the business of a banker, and constitutes, indeed, the greater part of it. So, also, the buying and selling of uncurrent funds and the exchanging of one kind of money for another are equally the practice of the money-changer and the banker."

"The business of banking, in its most enlarged signification, includes the business of receiving deposits, loaning money, and dealing in coin, bills of exchange, etc., besides that of issuing paper money." *Exchange Bank of Columbus* v. *Hines,* 3 Ohio St. 1.

While it is within the scope of the ordinary functions of a bank to deal in foreign exchange and money, such dealing is not necessarily and exclusively conducted by banks. A dealer in foreign exchange and foreign money is not necessarily a banker and does not necessarily perform a banking function. Since bankers first began to receive deposits of bullion, plate and the like, they have constantly extended their business to include new fields of operation. It is said in *Auten* v. *United States Nat. Bank,* 174 U. S. 125, that "the very first banking in England was pure borrowing. It consisted in receiving money, in exchange for which promissory notes were given payable to bearer on demand; and so essentially was this banking, as then understood, that the monopoly given to the Bank of England was secured by prohibiting any partnership of more than

six persons 'to borrow, owe or take up any sum or sums of money on their bills or notes payable at demand,' and it had effect until 1772, (about thirty years,) when the monopoly was evaded by the introduction of the deposit system." To whatever extent the powers of banks to engage in various kinds of business dealings may have been thought to be restricted, we know that modern bankers have extended their operations far beyond the original scope of banking powers. It was said in *Warren* v. *Shook,* 91 U. S. 704: "Having a place of business where deposits are received and paid out on checks and where money is loaned upon security is the substance of the business of a banker." In *Mercantile Nat. Bank* v. *City of New York,* 121 U. S. 138, it was said: "The business of banking, as defined by law and custom, consists in the issue of notes payable on demand, intended to circulate as money where the banks are banks of issue; in receiving deposits payable on demand; in discounting commercial paper; making loans of money on collateral security; buying and selling bills of exchange; negotiating loans, and dealing in negotiable securities issued by the government, State and national, and municipal and other corporations." Nevertheless, an individual who does one or more of these things is not necessarily engaged in the banking business, for one who only lends his own money, taking bonds and mortgages therefor, which he sells with a guaranty, is not a banker. (*Selden* v. *Equitable Trust Co.* 94 U. S. 419.) An individual is not engaged in the banking business because he does some of the things which are frequently or usually done by banks. Banks frequently buy and sell government and municipal bonds and the stocks and bonds of private corporations for themselves or for others for whom they act as brokers, they make collections for others, they make loans on the security of real estate mortgages, and they act as trustees by appointment of courts or under wills or deeds. They do these things, not because they are banking functions or are strictly

incidental to the banking business, but because they can do them advantageously in connection with the banking business. The brokerage business, the collection business, the mortgage loan business or the business of acting as trustee does not, therefore, become banking business. Brokerage corporations, collection agencies, mortgage loan companies and trust companies are not bankers because the business which they transact may be, and is frequently, done by banks, and a statute which by its title refers to banks and banking, only, cannot apply to such companies. Such a statute may regulate these branches of business so far as conducted by banks but cannot regulate them so far as others engaged in them are concerned. It may regulate banks in the conduct of the brokerage business, for instance, but it cannot regulate the brokerage business generally, where the title refers to banks and banking, only, and does not include the brokerage business. No one, from reading the title of the act in question, would think it had any reference to brokers or trust companies. The appellees receive no deposits, pay no checks, make no loans, discount no notes or bills of exchange, buy or sell no bonds, do none of the things which are distinctively characteristic of a bank. No one would suspect that a bill which purported to revise the law in relation to banks and banking would abolish their business any more than it would abolish bond brokerage or private mortgage loans.

The proviso which exempts express, steamship and telegraph companies from the prohibition against natural persons, firms or partnerships transmitting money to foreign countries also offends against section 22 of article 4 of the constitution by granting to such companies a special privilege from which all other natural persons are excluded. The privilege of engaging in any lawful business is the right of every individual, of which no one can be deprived except by a general law acting equally on all individuals in the same situation. It is subject to the police power and

must be exercised in accordance with the requirements of statutes passed in the exercise of that power for the protection of the public. No person or class of persons can be excluded from that privilege while others are permitted to enjoy it, unless some reason exists for the distinction having a just relation to the object to be accomplished. No reasonable distinction exists for this proviso. It declares, in effect, that incorporated banks, and express, steamship and telegraph companies, whether incorporated or not, may engage in the business of transmitting money to foreign countries, but no other natural person, firm or partnership may. So far as incorporated banks are concerned the reason for the distinction is apparent. As between natural persons and partnerships on the one hand, and express, steamship and telegraph companies on the other, the distinction is not based upon any just reason. It has no reference to character, solvency, financial responsibility, security, business or monetary facilities, incorporation, method of doing business, public inspection, supervision or report, or any other thing having any relation to the protection of the public from loss by reason of the dishonesty, incompetence, ignorance or irresponsibility of persons engaging in that business. Under this legislation, if two or more men desire to engage as partners in the business of transmitting money to foreign countries they cannot do so, but if they want to associate themselves as partners in an express, steamship or telegraph company they may do so and may then engage in the business of transmitting money to foreign countries. What protection this would be to the public is not apparent. Classification based upon a reasonable difference does not violate the constitutional provision, but a merely arbitrary distinction cannot be sustained. Since the unreasonable distinction made in the proviso is in violation of section 22 of article 4 of the constitution it deprives the appellees of the right to continue the business in which they are engaged without due process of law and

deprives them of the equal protection of the laws, in violation of section 2 of article 2 of the State constitution and of section 1 of the fourteenth amendment to the Federal constitution.

The decree is affirmed.          *Decree affirmed.*