**Roy C. Merrick, Appellant, v. Home Stove and Foundry Company et al., Appellees.**

**Gen. No. 33,317.**

Opinion filed January 2, 1930.

JACOBSON, MERRICK & LATTER, for appellant.

BRUNDAGE & GORMAN, for appellees.

MR. JUSTICE RYNER delivered the opinion of the court.

The Superior court of Cook county sustained a demurrer to complainant's amended bill of complaint. The complainant elected to abide by his amended bill of complaint which was thereupon dismissed for want of equity. The complainant has perfected this appeal.

The material allegations of the amended bill are that the Home Stove and Foundry Company was an Illinois corporation engaged in the manufacture of stoves and foundry products; that the company was founded in 1892 and was a prosperous concern until some years prior to the year 1924, when it became unable to meet its financial obligations; that on March 1, 1924 and for a long time prior thereto, as the complainant is informed and believes, its total assets did not exceed in value the sum of $130,000; that shortly prior to March 1, 1924, the parties in charge of the

business of the Home Stove and Foundry Company conceived the plan of relieving the financial difficulties of the company by transferring its debts and assets to the investing public.

The amended bill further alleges that shortly prior to March 1, 1924, Thomas L. Grace, and other individuals, attempted to form a purported corporation under the name of Thompson, Kent & Grace, Inc., "but said organization was invalid, for the reason that the object for which it was formed was to engage in the banking business and the business of loaning money, without complying with the statutes concerning the organization of corporations for these purposes, the declared object of said Thompson, Kent and Grace, Inc., being 'to buy, sell, acquire, take, own, hold, transfer, pledge, mortgage, encumber, convey, dispose of and deal in bonds, mortgages, notes, debentures, stocks, corporate and personal securities, assets and property of every kind and description'; that said corporation was organized with a capital of $125,000.00, and in its application for incorporation, the incorporators thereof certified that half of its capital stock was paid for, to wit, $31,250.00 in cash, and $25,000.00 in property; that said stock was not in fact paid, but in order to show an apparent payment, stock to the amount of $25,000.00 was stated in its application for incorporation to have been paid for in property, to wit: 'Files, prospect's lists, customer's lists, bond buyers' lists, leasehold interests and good will, all located in the office of the company,' but which alleged property was, in fact of no substantial actual market value whatever, and did not constitute money or moneys worth, required by law to be paid for corporate stocks, and that therefore, the attempted organization of said corporation was fictitious, and the said parties became and are liable as partners for their transactions under the guise of such pretended corporation."

The amended bill then charges that the parties acting under the name and style of Thompson, Kent & Grace, Inc. entered into an agreement with the officers of the Home Stove and Foundry Company that the latter should issue its bonds to the amount of $200,000, and that the Thompson, Kent & Grace organization would sell the bonds to the investing public; that the parties all knew, or should have known, that the total assets of the Home Stove and Foundry Company did not exceed in value the sum of $130,000, yet they caused a fictitious appraisal to be made of the assets which gave them a purported value of $630,443.52; that the bonds were issued and the main portion of them sold and that from the proceeds of sales, $165,000, came into the hands of the persons constituting the Thompson, Kent & Grace organization and the officers of the Home Stove and Foundry Company, but that no substantial addition was made to the assets of the latter company.

It is also alleged that the bonds were secured by a first mortgage lien upon the lands and buildings of the Home Stove and Foundry Company; that the aggregate face value of the bonds (but not including interest coupons thereon secured thereby) exceeded the fair cash market value of the lands and buildings mortgaged; that the bonds, therefore, were securities in Class "D" within the purview of the Illinois Securities Law, Cahill's St. ch. 32, ¶ 254 *et seq.;* that none of the parties involved filed in the office of the Secretary of State the statements and documents required by law in the case of Class "D" securities and "that the sales of said bonds were made in the course of repeated and successive transactions of like character, and were made by and through the said Thompson, Kent & Grace organization as brokers or dealers in said securities or Underwriters thereof, within the purview of said statute; and that said sales and each of them were contrary to said statute."

It is further charged that the Home Stove and Foundry Company retired about $35,000 worth of the bonds; that in the year 1928 it abandoned its business, entirely closed down its factory, leaving debts unpaid, to unsecured creditors in the amount of approximately $25,000, allowed its property to be sold for taxes in 1926, and finally in April, 1928, permitted a decree to pass against it, forfeiting its charter, at the suit of the Attorney General of the State of Illinois; that in March, 1927, the Home Stove and Foundry Company executed its note for $10,000, secured by a trust deed, and the complainant is informed and believes that the note is held and owned by one or more members of the purported corporation, Thompson, Kent & Grace, Inc. as security for a loan but that there was no legal consideration for the note, for the reason that the transaction was *ultra vires* the purported corporation and the note and trust deed should be canceled and set aside.

The complainant alleges that he purchased one of the bonds, issued under date of March 1, 1924, paying $500 for it; that there has been a default in the payment of principal and interest; that he brings his bill for himself and on behalf of all other owners and holders of said bonds who choose to participate in the suit and share the expense thereof and ''that complainant has elected to declare the sale of said bond to him void, under said statute and has tendered the said bond to the said makers and sellers thereof, and now here again tenders said bond to them, and demands the return of the consideration paid by him thereof, together with interest and his costs herein and his reasonable attorneys' fees in this action.''

The prayer for relief is:

''1. That a receiver be appointed to take charge and possession of all of the assets of the Home Stove and Foundry Company.

"2. That all individual defendants be required to account to the Home Stove and Foundry Company and the receiver for the proceeds of bonds which came into their hands.

"3. That the individual defendants be required to pay to the complainant and other bondholders the amount of the bonds which they hold for actual value, together with interest, costs and reasonable attorney's fees and that such bonds be declared fraudulent, in violation of the Illinois Securities Law, and therefore null and void.

"4. That the complainant and other holders of bonds be decreed to have an equitable lien upon the assets of the Home Stove and Foundry Company for the amounts paid by them for such bonds.

"5. That all of the assets of the Home Stove and Foundry Company, or so much as may be found necessary, be sold and the proceeds applied to the payment of said bonds so far as they are owned and held by *bona fide* purchasers for value."

The demurrer which the trial court sustained was filed by part of the individuals charged in the amended bill of complaint with having organized and managed Thompson, Kent & Grace, Inc. It stated as grounds for demurrer that the amended bill was without equity, that it was multifarious and that there was a lack of privity between the complainant and the demurring defendants. The trial court sustained the demurrer and dismissed the amended bill for want of equity.

Both the original and amended bills alleged that Thomas L. Grace, John F. Kent, George W. Thompson, Timothy J. Grace, Joseph A. Johnston, Thomas R. Hemmens, E. J. Lachmann, A. R. Ready, John A. Immel, A. L. Sawyer, Charles W. Wadsworth, R. M. Morrish, William A. Shay, Walter F. Truettner, W. R. Dorris, R. N. Murphy, Henry Battles and Howard A. Brundage, incorporated the Thompson, Kent & Grace, Inc.

Five of the individual defendants charged to have been connected with the organization and management of Thompson, Kent & Grace, Inc., i. e., Thomas L. Grace, John F. Kent, Timothy J. Grace, Joseph A. Johnston and Howard A. Brundage interposed a demurrer to the original bill of complaint and it was sustained.

The Home Stove and Foundry Company and one of its officials, Richard M. Morrisch, filed a demurrer to the original bill which appears not to have been disposed of. They were not ruled to join issue on the amended bill and they filed no plea, answer or demurrer to it.

George W. Thompson and Thomas R. Hemmens, two of the alleged organizers of Thompson, Kent & Grace, Inc., likewise filed a demurrer to the original bill of complaint which was never disposed of. Neither were they ordered to, nor did they plead to the amended bill of complaint.

The defendants, whose demurrer was sustained, and at whose instance the amended bill of complaint was dismissed for want of equity, represented only a part of the individuals charged with having illegally organized Thompson, Kent & Grace, Inc. As we view the record, therefore, the only question presented upon this appeal is whether the complainant is entitled to recover, from the demurring defendants, the principal and interest, due upon his bond, together with his costs and solicitor's fees. Apparently that is the view taken by counsel for the applicant, because in their brief they say: "The individual defendants may obviously be proceeded against either on the theory that their attempted organization of the selling corporation was invalid, and left them liable as partners, or because they are liable as persons who knowingly did acts in furtherance of the illegal sales."

The charter powers of Thompson, Kent & Grace, Inc.

as set out in the amended bill, were: "to buy, sell, acquire, take, own, hold, transfer, pledge, mortgage, encumber, convey, dispose of and deal in bonds, mortgages, notes, debentures, stocks, corporate and personal securities, assets and property of every kind and description."

While some of these powers may be exercised by banks, yet the mere grant of them does not make the licensee a banking institution, nor does the exercise of one or more of these powers constitute the doing of a banking business. Cahill's St. ch. 32, ¶ 13; Smith-Hurd Illinois Revised Statutes of 1929, ch. 32, sec. 13, reads, in part, as follows:

"Corporations created or to be created under the provisions of this Act, or created under the provisions of any prior corporation law of this State, to buy, sell, or otherwise deal in notes (not including the discounting of notes), open accounts, and other similar evidences of debt (not including bills of exchange), shall not be construed or considered to be within the prohibition of this section. No corporation shall be created under this Act to deal in commercial paper in the exercise of the functions of bank discount."

See also *Wedesweiler v. Brundage,* 297 Ill. 228, where the court said: "In *Reed v. People,* 125 Ill. 592, in discussing the meaning of the words 'banking powers,' as used in section 5 of article 11 of the constitution of 1870, the court said: 'We think the language employed should be used in its common, ordinary sense, and when this is done the banking powers referred to mean such as are ordinarily conferred upon and used by the various banks doing business in the country. The ordinary and usual powers exercised by banks are to discount notes and receive deposits. They may, and often do, possess other powers, but these are the ordinary and usual powers conferred upon and exercised by banks and bankers. Bouvier, in defining a bank,

says: "A place for the deposit of money; an institution (generally incorporated) authorized to receive deposits of money, to lend money and issue promissory notes, (usually known by the name of bank notes,) or to perform some one or more of these functions." "Banks are said to be of three kinds: deposit, discount and circulation." (See, also, *People v. Doty*, 80. N. Y. 225; *Pratt v. Short*, 79 id. 437.) Speaking in a commercial view, Bouvier is doubtless correct in his definition of a bank; but one of the chief characteristics and one of the most essential elements of a bank, as that term is ordinarily understood, is that it is a place for the deposit of money. The powers and functions of a bank are well stated in *Oulton v. Savings Institution*, 17 Wall. 117, as follows: "Banks, in the commercial sense, are of three kinds, to-wit: First, of deposit; second, of discount; third, of circulation. Strictly speaking, the term "bank" implies a place for the deposit of money, as that is the most obvious purpose of such an institution." ' "

Furthermore the amended bill of complaint does not allege that the corporation was organized under the laws of the State of Illinois, or even that it engaged in the banking business. It merely alleges that it engaged in the business of negotiating for and issuing and marketing bonds secured by mortgage or other loans.

The allegation that the stock of the corporation was partly paid for with property "of no substantial actual market value whatever" is a mere conclusion of the pleader. We are not advised as to what the actual or potential value of the property was.

While the complainant prays for a variety of relief, his amended bill is really predicated upon his alleged rights under "The Illinois Securities Law," and particularly under section 37 of that act, Cahill's St. ch. 32, ¶ 290, which reads as follows:

"(1) Every sale and contract of sale made in viola-

tion of any of the provisions of this Act shall be void at the election of the purchaser, and the seller of the securities so sold, the officers and directors of the seller, and each and every solicitor, agent or broker of or for such seller, who shall have knowingly performed any act or in any way furthered such sale, shall be jointly and severally liable, in an action at law or in equity, upon tender to the seller or in court of the securities sold, to the purchaser for the amount paid, the consideration given or the value thereof, together with his reasonable attorney's fees in any action brought for such recovery.''

The allegations of the amended bill, pertinent to this issue, are:

1. That certain negotiations were had between the officers of the Home Stove and Foundry Company and ''certain members of the organization known as Thompson, Kent & Grace,'' resulting in an agreement that the Home Stove and Foundry Company would issue its bonds in the amount of $200,000 and that the ''Thompson, Kent & Grace organization'' would sell the securities to the investing public.

2. That certain of the parties to the agreement well knew, ''and the others by the exercise of reasonable diligence and good faith, would have known'' that the Home Stove and Foundry Company was in an insolvent and failing condition and that the aggregate value of its assets did not exceed $130,000.

3. That ''certain of the said parties'' caused the assets of the Home Stove and Foundry Company to be appraised at the inflated and fictitious valuation of $630,443.52.

4. That $165,000 worth of bonds were sold and that the proceeds from the sales ''came to the hands of the said persons constituting the organization known as Thompson, Kent & Grace, and the officers of the Home Stove and Foundry Company.''

5. "That the said organization known as Thompson, Kent & Grace, and the several members thereof, then proceeded to and did knowingly sell said bonds to a large number of persons, including your orator."

6. That the aggregate face value of the bonds (but not including interest coupons thereon secured thereby), exceeded the fair cash market value of the property conveyed by the trust deed securing the bonds and that therefore the securities were of Class "D" under the statute.

7. "That neither said Home Stove and Foundry Company, nor said persons comprising the organization known as Thompson, Kent & Grace, nor any one for them, or any of them, nor any other person, filed or caused to be filed in the office of the Secretary of State of the State of Illinois, the statements and documents" required to qualify such securities for sale.

8. That repeated sales of the bonds "were made by and through the said Thompson, Kent & Grace organization as brokers or dealers in said securities or underwriters theerof."

These allegations are insufficient to charge the demurring defendants of being sellers of the securities in question or of being officers or directors of the seller. Neither do they show that any of them acted as solicitor, agent or broker of the seller. In addition to this, it is not charged that the particular defendants had knowledge of the alleged financial condition of the Home Stove and Foundry Company, or that they knowingly performed any acts in furtherance of sales in violation of the Illinois Securities Law.

For the foregoing reasons, the decree of the superior court of Cook county is affirmed.

*Decree affirmed.*

WILSON, P. J., and HOLDOM, J., concur.