(Nos. 22532, 22533.
The People *ex rel.* Walter W. McLaughlin, Director of Agriculture, Appellee, *vs.* The G. H. Cross Company *et al.*—(The Hartford Accident and Indemnity Company, Appellant.)

*Opinion filed October 14, 1935.*

WILSON & McILVAINE, and ARTHUR L. ISRAEL, (J. F. DAMMANN, WILLIAM B. HALE, and K. F. MONTGOMERY, of counsel,) for appellant.

OTTO KERNER, Attorney General, (LOUIS SALINGER, and W. E. TRAUTMANN, of counsel,) for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

Two actions of debt were brought in the name of the People of the State of Illinois by the Director of Agriculture on behalf of various shippers against the G. H. Cross Company and the defendant the Hartford Accident and Indemnity Company, in the municipal court of Chicago, for the recovery on two bonds given by the parties named, as principal and surety, to the People of the State of Illinois in the sum of $5000. The two cases were consolidated and heard on an agreed statement of facts. Judgment was rendered for the Director of Agriculture. The surety has appealed to this court.

The statement of claim set forth that the G. H. Cross Company was on July 1, 1931, a corporation organized under the laws of Illinois and thereafter engaged in the business of receiving farm products for sale on commission. The Hartford Accident and Indemnity Company was on that date a corporation acting as surety on bonds. The principal and surety herein named entered into a written obligation reciting that the G. H. Cross Company had applied to the Director of Agriculture of this State for a license to engage in the business of receiving farm products for sale on commission, pursuant to the provisions of "An act to regulate the consignment and sale on commission of farm produce," approved June 28, 1919, in force July 1, 1919, as amended. The bond was in accordance with the provisions of the act, and was conditioned that if the principal should honestly account for and handle all the produce received, make payment to the consignors of all moneys received for merchandise consigned, and should indemnify and keep indemnified the consignors from and against all fraudulent acts in the sale and handling of the

produce of the consignors, the obligation should be void. The license was issued. The statement of claim also alleged that there was delivered to the Cross Company produce described therein, of the value stated, for sale on commission, and that the Cross Company did not honestly account for and handle nor make payment for the produce so delivered and did not indemnify the consignors against its fraudulent acts in the handling of their produce, by reason of which the actions accrued.

An affidavit of merits and amended affidavit of merits were filed, averring in each case that the alleged bond mentioned in the statement of claim was not approved by the Director of Agriculture, as required by the act to regulate the consignment and sale on commission of farm products. The affidavit denied that the Cross Company had not honestly accounted for and handled farm products on consignment; averred that the consignor did not, within sixty days after the shipment of farm products, make demand for an accounting or payment, or file with the Director of Agriculture a copy of demand, setting forth the nature and amount of the goods consigned. It is averred that the act mentioned requires a commission merchant to keep his records for a period of six months, only, while more than nine months in one case and nineteen months in the other had elapsed since the dates of the shipments and transactions mentioned and the filing of the actions, and that the records were not then open to inspection by the plaintiff, and that the plaintiff could not state that the Cross Company did not honestly account for or make payment for the farm products delivered to it for sale on consignment.

It is averred that the act to regulate the consignment and sale on commission of farm products is unconstitutional, as a violation of the third clause of section 8 of article I of the constitution of the United States, because it is a restriction on and a regulation of interstate commerce, and that the shipments mentioned were shipments

in interstate commerce, and that the Congress of the United States had enacted a statute covering the subject matter of consignments and shipments of perishable commodities in interstate commerce, and that it supersedes the Illinois statute on the same subject matter. It is averred that the statute under which the bond was given violates the fourteenth amendment of the constitution of the United States and sections 2 and 19 of article 2 of the constitution of Illinois, providing against the taking of property without due process of law. The question presented by this last averment was not argued and is not considered.

The Cross Company solicited and received shipments of farm produce at its place of business in Chicago, which produce remained in the original packages in which it was shipped and was the property of the original consignors and sold for their account by the Cross Company on a commission basis. No consignments were purchased by that company for its own account, to be re-sold by it. The produce handled by the Cross Company was shipped to Chicago from points within and without the State and was sold by it to purchasers wherever they might be located. Less than five per cent of the produce originated in this State and the remainder was shipped from other States. The company was actively in the business for a long time prior to July 1, 1931, and until October 12, 1932, when an involuntary petition in bankruptcy was filed against it and it was thereafter adjudged a bankrupt.

During the period it was in business the Cross Company issued and mailed to the respective consignors of produce the account of sales, showing the selling price of the produce, the transportation and drayage charges, the brokerage fees and the net proceeds due the respective consignors. The shipments of farm produce alleged in the statement of claim to have been made to the Cross Company were made at the times shown in that statement and for the amounts therein appearing, and they so appear on

the books of the Cross Company, but no part of the accounts has been paid to the consignors mentioned in the statement of claim.

The defendant's principal contentions are: The Commission Merchants act is unconstitutional because it restricts and imposes a burden upon interstate commerce, in violation of the Federal constitution; that the Federal Congress having undertaken to regulate interstate commerce in the particular class of business here involved, the State legislature was deprived of the right to regulate it; that the act is unconstitutional because it delegates arbitrary power to administrative officers without rule or regulation, and is uncertain, inconsistent, incomplete and indefinite; that the provisions of the act under which the bond was exacted must be regarded as though they were incorporated in the bond, and that, the act being unconstitutional, the bond is unenforceable against both the principal and surety.

The plaintiff's contentions are: The act is within the police power of the State to prevent fraud and affects interstate commerce only incidentally and remotely and that the regulation is legal; that the State has the concurrent right with Congress to legislate with reference to agricultural products, and that the requirements of the bond are certain and enforceable.

The act in question includes and covers produce such as is involved in the actions instituted. Section 2 provides that no person, firm or corporation shall receive, sell or offer for sale, or solicit consignments or shipments for sale on commission within this State, any kind of farm produce without a license as provided by the act. An application must be filed with the Director of Agriculture for a license to do a commission business in farm produce, and a payment of ten dollars and a bond are required, to be renewed each year. Section 3 provides that the bond is to secure an honest accounting and handling of produce received and

for the payment therefor to the consignor. The Director of Agriculture may bring an action in any court of competent jurisdiction in the county in which the place of business of the licensee is located to recover payment for the goods sold on commission and not paid to the consignor. Section 4 gives power to the Director of Agriculture and his assistants to investigate, either upon a verified complaint of any interested person or whether or not a complaint is filed, the record of any person, firm or corporation applying for a license, or any transaction involving the solicitation, receipt, sale or attempted sale of farm produce, the failure to make proper and true accounts and settlements, the making of false statements as to market conditions with intent to deceive, or the failure to make payment for goods received or other alleged injurious transactions, and may examine the ledgers, books of account, memoranda or other documents relating to the transaction involved of any commission merchant, and may take testimony. The same section provides how a consignor may proceed who has not obtained an honest accounting in any transaction. Section 5 provides that the director may decline to grant a license, or may revoke one already granted, for different causes enumerated, among which are that the licensee has failed to account promptly and properly or to make settlements, with intent to defraud. Section 7 provides that the commission merchant shall make a record of the receipt and handling of the produce, keep the record thereof for six months, and has the burden of proving the correctness of his records as to any transactions which may be questioned. Section 8 provides that any person or firm guilty of a violation of the act shall be guilty of a misdemeanor and punished by a fine of not less than $25 nor more than $500. Laws of 1919, pp. 14 to 18; Laws of 1927, pp. 6 to 8.

Chapter 20 of title 7, on agriculture, of the United States Code, relating to farm produce received in interstate

commerce by commission merchants and others, provides, among other things, (section 491,) that any person, firm, association or corporation receiving, among other merchandise, farm products of any kind or character in interstate commerce for or on behalf of another, who without good and sufficient cause therefor shall destroy or abandon, discard as refuse or dump any produce directly or indirectly, or through collusion with any person, or who shall knowingly and with intent to defraud make any false report or statement to the person, firm, association or corporation from whom any produce was received, concerning the condition, quality, quantity, sale or disposition thereof, or who shall knowingly and with intent to defraud fail truly and correctly to account therefor, shall be guilty of a misdemeanor and upon conviction shall be punished by a fine of not less than $100 and not more than $3000, or by imprisonment for a period not exceeding one year, or both, at the discretion of the court. Section 492 provides that the Secretary of Agriculture shall by regulation provide for the making of prompt investigations and the issuing of certificates as to the quality and condition of produce received in interstate commerce, upon application of any person, firm, association or corporation shipping, receiving or financially interested in such produce. Such regulations shall designate the classes of persons qualified and authorized to make such investigations and issue such certificates. By section 493 the Secretary of Agriculture is authorized and directed to enforce the provisions of the act. By section 494 the Secretary of Agriculture may make such rules and regulations as he may deem advisable to carry out the provisions of the chapter, and may cooperate with any department or agency of the government, any State, Territory, district or possession, or department, agency or political subdivision, or any person. Section 496 provides that the chapter shall not abrogate or nullify any other statute, whether State or Federal, dealing with the

same subjects as chapter 20, but it is intended that all such statutes shall remain in full force and effect, except in so far as they are inconsistent with the United States act or repugnant to it. U. S. C. A. title 7, (cumulative part,) chap. 20, pp. 29, 30, 31.

Whether a State legislative act violates the commerce clause of the United States constitution and the acts of Congress in pursuance thereof may involve the consideration of a variety of rules of law, applicable or not, as the special facts of a given case require. Interstate commerce is not a technical legal conception but a practical one drawn from the course of business. (*Minnesota* v. *Blasius,* 290 U. S. 1.) A State may make valid enactments in the exercise of its legislative power to promote the welfare and convenience of its citizens, although in their operation they may have an indirect effect upon interstate traffic. (*Pennsylvania Railroad Co.* v. *Hughes,* 191 U. S. 477, 488; *Sligh* v. *Kirkwood,* 237 id. 52; *South Covington and Cincinnati Street Railway Co.* v. *City of Covington,* 235 id. 537; *Sherlock* v. *Alling,* 93 id. 99.) In enacting police regulations the State is not bound to cover the whole field of possible abuses. (*Patsone* v. *Pennsylvania,* 232 U. S. 138, 144; *People* v. *Monroe,* 349 Ill. 270, 290.) Protection against the fraudulent acts of those entrusted with the property of others is a legitimate subject of the police power. (*Hall* v. *Geiger-Jones Co.* 242 U. S. 539.) But even in the just exercise of the police power the State may not interfere with the authority of Congress over the subject of interstate commerce, for Congress has exclusive power to make regulations on that subject, but if interstate commerce is only incidentally affected, State regulation is authorized, in pursuance of the police power, in matters of local concern. (*Sligh* v. *Kirkwood, supra.*) There is no constitutional objection to regulations both by Congress and the States upon the same subject matter where there is no conflict, and the State may exercise its authority until Con-

gress acts. (*Savage* v. *Jones,* 225 U. S. 501; *Sligh* v. *Kirkwood, supra.*) Congress will not be deemed to have superseded or excluded State action under the commerce clause unless its intention to do so has been made definite and clear. (*Mintz* v. *Baldwin,* 289 U. S. 346.) The act of Congress, the substance of which has been here stated, recognizes the right of, and authorizes the States to enact, concurrent legislation with respect to the subject matter of the act and not inconsistent therewith or repugnant thereto.

Whether a series of acts in a given case constitutes the carrying on of interstate commerce is to be determined by what is actually done. (*South Covington and Cincinnati Street Railway Co.* v. *City of Covington, supra.*) They may constitute commerce though not of an interstate nature, or they may result in interstate commerce though not yet commenced, or the interstate transportation may have terminated. Merchandise which has been unloaded and stored ceases to be a subject of interstate commerce and loses its immunity from State taxation or regulation. (*Nashville, Chattanooga and St. Louis Railway Co.* v. *Wallace,* 288 U. S. 249, 266; *Gregg Dyeing Co.* v. *Query,* 286 id. 472; *Hart Refineries* v. *Harmon,* 278 id. 499; *Susquehanna Coal Co.* v. *Mayor of South Amboy,* 228 id. 665; *Bacon* v. *Illinois,* 227 id. 504, 516, 517; *General Oil Co.* v. *Crain,* 209 id. 211; *Kehrer* v. *Stewart,* 197 id. 60; *Minnesota* v. *Blasius, supra.*) Where the business, in its essential national aspect, has come to an end and the condition existing or the acts under consideration performed are local, they are not subject to regulation by the Federal · government, (*Schechter Poultry Corp.* v. *United States,* 79 U. S. (L. ed.) 888,) but they are subject to regulation by the State. (*Public Utilities Com.* v. *Landon,* 249 U. S. 236.) In *Hall* v. *Geiger-Jones Co. supra,* the court decided the question with respect to the power of the State to license persons engaged in the business of selling securities in the State of Ohio to prevent fraud. The law ap-

plied to the disposition of securities within the State, and while information concerning those issued in other States and foreign countries was required to be filed, they were only affected by the requirement of one who dealt with securities in the State. Upon their transportation into the State there was no impediment. There was no regulation or interference with them after they reached the State. There was an exaction, only, that he who disposed of them in the State should be licensed to do so, and this only that they might not appear in false character and impose an appearance of value which they did not possess. It was only an indirect burden upon them as objects of interstate commerce.

Counsel for defendant assert that the present case is within the rule announced in *Swift & Co.* v. *United States,* 196 U. S. 375, which held that when cattle were sent from a place in one State with the expectation that they will end their transit, after purchase, in another State, and when in effect they do so, with only the interruption necessary to find a purchaser at the stock yards, and when this is a constantly recurring course, it constitutes interstate commerce, and the purchase of the cattle is an incident of such commerce. In that case a suit was brought against a number of corporations, firms and individuals of different States alleging that they were engaged in interstate commerce in the purchase, sale, transportation and delivery, and subsequent re-sale at the point of delivery, of meats, and that they combined to refrain from bidding against each other in the purchase of cattle, to maintain a uniform price at which the meat should be sold, and to maintain uniform charges in delivering meats thus sold through the channels of interstate trade to the various dealers and consumers in other States. They thus artificially restrained commerce in fresh meats from the purchase and shipment of livestock from the plains to the final disposition of the meats to the consumers in the markets of the country. The collective

effect of all the facts charged in the bill constituted commerce among the States. That decision, however, recognizes a distinction between the facts therein alleged and those involved in the conduct of a local business by commission merchants, even when that which the brokers are employed to sell is an object of commerce among the States. When the brokers are not the buyers and sellers but furnish only the facilities for sales their business affects commerce among the States only indirectly.

*Hopkins* v. *United States,* 171 U. S. 578, is cited in the foregoing decision. In this latter case an unincorporated volunteer association of men assisted individual members of the association in receiving livestock from owners in various States, in feeding and preparing their livestock for the market, disposing of it and receiving the proceeds from purchasers. They paid the owners their proportion of the proceeds after deducting charges, expenses and advances. In deciding whether the business conducted by the association was interstate commerce the court said: "We come, therefore, to the inquiry as to the nature of the business or occupation that the defendants are engaged in. Is it interstate commerce in the sense of that word as it has been used and understood in the decisions of this court? Or is it a business which is an aid or facility to commerce, and which, if it affects interstate commerce at all, does so only in an indirect and incidental manner? * * * The business of defendants is primarily and substantially the buying and selling, in their character as commission merchants, * * * livestock which has been consigned to some of them for the purpose of sale, and the rendering of an account of the proceeds arising therefrom. The sale or purchase of livestock as commission merchants * * * is the business done, and its character is not altered because the larger proportion of the purchases and sales may be of livestock sent into the State from other States or from the Territories. Where the stock came from or where it may

ultimately go after a sale or purchase, procured through the services of one of the defendants, * * * is not the substantial factor in the case. The character of the business of defendants in this case must be determined by the facts occurring at that city [the place they conducted their business]. * * * It does not appear that the defendants are engaged in interstate commerce."

The business of the Cross Company is more like the business of an individual member of the association referred to in the case last cited than to the business of one of the defendants engaged in the meat-packing business in Chicago and other cities referred to in *Swift & Co.* v. *United States, supra.* The present case is somewhat similar to the recent case of *Schechter Poultry Corp.* v. *United States, supra.* That corporation conducted a wholesale poultry slaughter-house market in Brooklyn, New York. It purchased live poultry from commission men at markets or railroad terminals in New York City, and occasionally in Philadelphia, for slaughter and re-sale to retail poultry dealers and butchers, who in turn sold directly to consumers. Ninety-six per cent of the live poultry marketed in New York City comes from other States. Notwithstanding the poultry came from other States, it was held that code provisions promulgated by the President, under congressional authority, relative to wages of employees and hours of employment, did not concern its transportation from other States. Persons employed in slaughtering and selling in local trade are not engaged in interstate commerce. Their hours of work and wages have no direct relation to interstate commerce.

The Cross Company conducted an independent business in the State of Illinois. Its agency was not confined to representing the shippers whose produce was handled in these cases. Though there was not a sale to the consignee, the produce had come to rest at its destination in Chicago, to be thereafter sold by the commission merchant or cor-

poration on a commission basis. It had been withdrawn from the carriers and was not in transit. It had a situs in this State and no other destination was in the contemplation of the shippers. Some of the produce was in storage for a considerable period of time and substantial storage charges accrued. In one of the actions it was stipulated that apples were stored, and storage charges amounting to $168.93 were deducted from the gross sale price. Whether any or all of the produce in the other action was placed in storage is not disclosed by the record, but it was an established practice of that company, when necessary to obtain the best selling price, to place produce in storage. The regulations provided in the act here in question had nothing to do with the shipments as such but related only to the conduct of the business to prevent fraud, and they did not operate directly to restrain or burden interstate commerce. Under these circumstances it is immaterial whether the produce remains in the original packages of the shipper or whether there has been an actual transfer by sale. The shipment was to a particular destination for the use of the consignor or that he should have the proceeds of a sale by a commission merchant. (*Hart Refineries* v. *Harmon, supra; Bacon* v. *Illinois, supra; Woodruff* v. *Parhan,* 75 U. S. 123.) That the business conducted by the Cross Company is in the nature of a local facility only indirectly affecting interstate commerce and is subject to regulation under the police power is supported by the reasoning in *Hopkins* v. *United States, supra,* and *Hall* v. *Geiger-Jones Co. supra.*

It is immaterial that the date of the institution of the suits was more than nine and nineteen months, respectively, subsequent to the time of shipments, because commission merchants are required to keep their records only six months. What the commission merchant's record contained was stipulated as a fact in this case. The six-months period for keeping the record or records was not a limita-

tion upon the time within which an action should be commenced. Although it was averred in the amended affidavit of merits that demand was not made within sixty days after the shipment of the produce there is now no contest upon that question.

It is contended that the statute with respect to the bond required is void because it delegates arbitrary power to administrative officers without rule or regulation, and is too indefinite where it is provided, "all bonds to be of a standard form as to terms and conditions, approved by the director, and to secure an honest accounting." Among the cases cited are *People* v. *Beekman & Co.* 347 Ill. 92, and *People* v. *Federal Surety Co.* 336 id. 472. In the former case it was held that a bond of not less than $2000 nor more than $50,000, conditioned that the principal would comply with the Securities law of the State and would conduct his business so as not to work a fraud, and would make sales without material misrepresentations, and would account to persons interested for money and property received and deliver securities to purchasers or persons entitled thereto when paid for and due to be delivered, "with terms and in form to be approved by the Secretary of State," and authorizing the inclusion of other terms not specified in the act, vested discretionary power in an administrative officer without properly defining the terms under which his discretion was to be exercised, and was invalid. In *People* v. *Federal Surety Co. supra,* the bond was variant from the provisions prescribed by law and was illegal. The State, in the exercise of the police power, has authority to regulate the business and require such safeguards as are appropriate to protect customers of commission merchants against dishonesty. The requirement of a bond from commission merchants is an appropriate means of protecting those dealing with them. A statute requiring a bond constitutes a part of the bond, and it must be assumed that the bond is executed with reference to the

provisions of the statute. (*Estate of Ramsay* v. *People,* 197 Ill. 572.) It was so provided in the bonds in the present cases and they were in accordance with the provisions of the statute. The provision in the act as to the bond was that it should be in the definite and exclusive sum of $5000. All bonds were to be of a standard form as to terms and conditions, approved by the Director of Agriculture, to secure an honest accounting and handling of produce received. In the present case there was no lack of uniformity and there was no special discretion committed to the Director of Agriculture, but the standard form as to terms and conditions would be such as were in accordance with the statute. In *Hall* v. *Geiger-Jones Co. supra,* a law regulating the dealing in investment securities was under consideration. The commissioner or superintendent of banks and banking in Ohio was required to be satisfied as to the good repute in business of the applicant and named agents. It was contended that the law conferred arbitrary power upon him. It was held that the law was addressed to a complex situation. Its purpose was to give a basis for judgment of the securities offered the purchasing public, secure credit where it was deserved and confidence to investment and trading, prevent deception and save credulity and ignorance from imposition, so far as it could be done by the approved reputation of the seller of the securities, and provide authoritative information. The regulation was held sufficiently definite and the discretion allowed the commissioner not arbitrary. Neither the act nor the bond in the present case is subject to the criticism offered against them. *Nebbia* v. *New York,* 291 U. S. 502, 522, 523; *Payne* v. *State of Kansas,* 248 id. 112; *People* v. *Perrette,* 253 N. Y. 305, 308, 309.

The judgment of the municipal court is affirmed.

*Judgment affirmed.*