MARSHALL FIELD AND CO. *v.* UNITED STATES (No. 4550) [1]

---

[1] C. A. D. 357.

United States Court of Customs and Patent Appeals, January 7, 1947

*Joseph F. Lockett* for appellant.

*Paul P. Rao*, Assistant Attorney General (*Joseph F. Donohue*, special attorney, of counsel), for the United States.

[Oral argument December 10, 1946, by Mr. Lockett and Mr. Donohue]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges

JACKSON, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, Third Division, C. D. 983, overruling the protest of appellant and sustaining the action of the collector of customs at the port of Wilmington, N. C., assessing duty on certain yarn under paragraph 1107 of the Tariff Act of 1930 as modified by the trade agreement with the United Kingdom, T. D. 49753, at the rate of 30 cents per pound plus 30 per centum ad valorem.

The case was submitted to the trial court on written stipulation of facts.

It appears that the Abbot Worsted Co. of Graniteville and Forge Valley, Mass., manufactures, among other things, yarn from wools imported conditionally free of duty under paragraph 1101 (b) of the Tariff Act of 1930 as amended by section 33, Customs Administrative Act of 1938, 52 Stat. 1090, 19 U. S. C. A. § 1001, and the Customs Regulations of 1937 as amended by T. D. 49658.

On or about February 4, 1941, appellant purchased from the Abbot Co. 25,000 pounds of wool (carpet yarn, natural white) at 75 cents per pound F. O. B. Leakesville, N. C. Pursuant to said sale the Abbot Co. on March 10, 1941, shipped to appellant 7,028 pounds of yarn, freight prepaid, and packed in 29 bales, by railroad to Boston, Mass., where it was transferred to a vessel of the Merchants & Miners Transportation Co. for transportation to Norfolk, Va., and thence by rail to Leakesville.

The ship carrying the yarn went aground on Penikese Island in Buzzards Bay off the coast of Massachusetts on March 12, 1941, and in an attempt to float the vessel, 21 bales were jettisoned. The jettisoned merchandise was recovered after having been submerged in sea water for 2 weeks by the shipping company's insurance underwriters and after having been laundered was sold at public auction at Norfolk on May 1, 1941. Notice of the intention to sell had been theretofore advertised in newspapers published in New York, Norfolk, Baltimore, and Philadelphia.

The eight undamaged bales were delivered to appellant on April 17, 1941.

Four days after delivery of the undamaged bales, appellant was notified by letter from the underwriters that the ship had stranded and if appellant did not receive its shipment within a reasonable time a claim therefor would be in order. For the reason that appellant purchased the yarn at a delivered price in Leakesville it filed no claim, but notified the Abbot Co. which on making its claim was paid the full value of the jettisoned yarn.

On May 1, 1941, the recovered bales were purchased at auction as aforesaid by the Pilgrim Mill Supply Co., New Bedford, Mass., and thereafter that company offered to sell them to appellant. After consideration appellant found the merchandise unsuitable for use in the manufacture of carpets, rugs, or other floor coverings and declined to purchase it. The yarn was ultimately made into sweaters, fringes for baby carriage covers, and for use in hand netting or hand framed weaving.

Paragraph 1101 (b), as amended, reads as follows:

PAR. 1101. (b) Any of the foregoing [wool and hair of the camel] may be entered or withdrawn from warehouse without the payment of duty by a manufacturer, processor, or dealer upon the filing of a bond to insure that any wool or hair entered or withdrawn thereunder shall be used only in the manufacture of press cloth, camel's hair belting, knit or felt boots, heavy fulled lumbermen's socks, rugs, carpets, or any other floor coverings. A manufacturer, processor, or dealer may be relieved of liability under his bond with respect to any wool or hair so entered or withdrawn which is transferred in its imported or any other form to another manufacturer, processor, or dealer who has filed a bond to insure that the merchandise so transferred shall be used only in the manufacture of the above-enumerated articles. If any wool or hair so entered, withdrawn, or transferred under bond is used or transferred for use in its imported or any other form in any manner otherwise than in the manufacture of the articles enumerated above, there shall be levied, collected, and paid on the merchandise so used or transferred in violation of the bond the regular duties which would apply to such merchandise if imported in its condition at the time of such use or transfer. Such duties shall be paid by the manufacturer, processor, or dealer whose bond is charged with the wool or hair at the time of such use or transfer; but such duties shall not be levied or collected on any merchandise (except white soft wastes, white threads and noils, which shall be dutiable at seven-eighths of such regular duties when used or transferred for use otherwise than in the manufacture of the enumerated articles) resulting in the usual course of manufacture of such enumerated manufactured articles which cannot be used (with or without further preparation) in the usual course of the manufacture of such enumerated articles or which is exported or destroyed. When any wool or hair which has been entered or withdrawn under bond as provided for in this subparagraph is used or transferred for use, in its imported or any other form, otherwise than in the manufacture of the above-enumerated articles and prior to such use or transfer there shall have been combined or mixed with such wool or hair any other merchandise, the whole or the combination or mixture shall be presumed to be composed of wool or hair entered or withdrawn under bond, as provided for in this subpara-

graph, unless the manufacturer, processor, or dealer liable for the payment of the duties shall establish the quantity of bonded wool or hair in such combination or mixture. Every manufacturer, processor, or dealer who has given a bond pursuant to the provisions of this subparagraph shall report any use or transfer of merchandise in violation of the terms of his bond, within thirty days after such use or transfer, to the collector of customs in whose district the bond is filed; and for failure to so report, such manufacturer, processor, or dealer shall be liable to a penalty equal to the value of the merchandise so used or transferred at the time and place of such use or transfer. Such penalty shall be in addition to the duties above provided for. The Secretary of the Treasury is authorized to prescribe such regulations and the form, conditions, and amounts of such bonds as may be necessary to carry into effect the provisions of this subparagraph.

Pursuant to the provisions of that paragraph the Abbot Co. had filed a bond on customs Form 7549, dated May 24, 1940, in the sum of $100,000 with the Collector of Customs at the port of Boston and appellant filed its bond dated May 20, 1940, in the sum of $20,000 on the same numbered form with the Collector of Customs at the port of Wilmington, N. C. Both companies stated in their bonds that they expected to enter or withdraw conditionally free of duty certain wool or hair in its imported or other form or to receive the same by transfer under bond provided for in paragraph 1101, as amended, during the period from June 1, 1940, to and including the last day of May 1941.

On March 10, 1941, the Abbot Co. signed a certificate which evidenced the transfer of the 29 bales of yarn from it to appellant. On receipt of that written transfer appellant on March 14, 1941, certified on it that the transfer had been made. The Abbot Co. filed the document so signed and certified in the office of the Collector of Customs at Boston on April 2, 1941, from where it was forwarded to the collector at Wilmington and filed on May 13, 1941. The 29 bales, by reason of the transfer certificate, were charged against the bond of appellant and credited on the bond of the Abbot Co.

On August 21, 1941, appellant filed an abstract of its records concerning the use made of the involved goods in the office of the collector at Wilmington in accordance with article 510 of the Customs Regulations of 1937 as amended by T. D. 49658. Accompanying the abstract was a letter from a subsidiary of appellant pointing out that only 8 of the 29 bales were actually received and that the remaining bales had been submerged in salt water and damaged.

On November 6, 1941, at the request of the collector at Wilmington, appellant filed an affidavit giving complete information concerning the 29 bales and on May 22, 1942, the collector demanded from appellant the sum of $2,416.80 which was the sum total of specific duty on 5,146 pounds of yarn at the rate of 30 cents per pound plus

an ad valorem duty of 30 per centum on the value of the yarn which was fixed at $2,910.32.

On August 4, 1942, appellant paid the demanded sum under protest. The money so paid was charged to the Abbot Co. The statutory penalty which had been assessed was subsequently canceled by authority of the Secretary of the Treasury.

Appellant in its protest claimed that the sum of $2,416.80 (duty assessed against the unreceived bales) was illegal; that any obligation to pay such duty was canceled by its reporting to the collector the use or transfer for use of the merchandise; that there was no examination of the involved merchandise for the purpose of appraisement and, therefore, no liquidation; that if the yarn was dutiable, allowance should have been made because of its damaged condition and also that classification should have been made under paragraph 1558 of the present tariff act as a nonenumerated manufactured article or as a nonenumerated unmanufactured article, or under paragraph 1555 as waste, not specially provided for, or as wool waste not specially provided for under paragraph 1105 as modified by the trade agreement with the United Kingdom, T. D. 49753.

The trial court in its decision overruled all of appellant's claims and held that the collector acted in accordance with the statute, pointing out that the bond of appellant was charged with payment of duty at the time the merchandise was transferred for and put to use contrary to the provisions of 1101 (b), *supra*. The court further held that its conclusion was supported by the legislative history of the Customs Administrative Act of 1938.

Appellant in its assignment of errors confines its contention to the fact that it did not use or transfer for use the involved 21 bales and that they were sold without its knowledge or consent; that it could not use such merchandise in the usual course of manufacturing floor coverings; that appellant should not have been held liable to pay the protested duties unless it was found that the merchandise could have been used in the manufacturing of floor coverings; that its obligation, if any, was canceled by reporting to the collector the use or transfer of the 21 bales in accordance with customs regulations; that it had nothing to do with the transaction transferring the yarn for prohibited use because it had neither title nor possession and therefore could exercise no control over either the buyer or seller of the yarn at public auction.

As was stated by this court in the case of *United States* v. *Joseph G. Brenner Co.*, 19 C. C. P. A. (Customs) 105, T. D. 45243,

The office of an assignment of error is to enable the court and opposing counsel to see on what points the appellant's counsel intend to ask a reversal of the judgment and to limit the discussion to these points. *Phillips & Colby Construction Co. v. Seymour et al.* 91 U. S. 646.

Therefore, we will consider only the "* * * statement of the errors of law and fact complained of; * * *" 28 U. S. C. A. § 310, Rule XVI of the Rules of the United States Court of Customs and Patent Appeals, and not any other contentions made before the trial court and appearing here in the brief of appellant.

The crucial issue of this appeal is whether or not appellant was liable under its bond for the payment of the duties imposed by the collector.

It will be noted that paragraph 1101 (b) provides that wool or hair may be entered or withdrawn from warehouse for the manufacture of the certain articles enumerated therein without the payment of duty by a manufacturer, processor, or dealer "* * * *upon the filing of a bond to insure* * * *" that the importations "* * * *shall be used only* * * *" for such manufacture and that relief from liability under such bond may be obtained when the imported merchandise is transferred in any form to another manufacturer, processor, or dealer who files "* * * *a bond to insure* * * *" that the said merchandise "* * * *shall be used* * * *" only in making the designated articles. The paragraph further provides that if any such merchandise *is used or transferred for use in any form or manner* otherwise than is therein set out, it shall be held to be in violation of the bond charged with the merchandise *at the time of such use or transfer for use* and that duty shall be assessed and paid as would apply to merchandise "* * * if imported in its condition at the time of such use or transfer * * *."

The bonds executed by the Abbot Co. and appellant are each on customs Form 7549 and in the heading thereof the following appears:

For the production of evidence required by law under Title I, Schedule 11, Paragraph 1101, of the Tariff Act of 1930, as amended by Section 33, Customs Administrative Act of 1938.

The condition of the obligation binding the principal reads as follows:

Now, Therefore, The Condition Of This Obligation Is Such, That if the said principal—

(1) Shall not use or transfer for use the said wool or hair in its imported or any other form otherwise than in the manufacture of the articles enumerated in paragraph 1101 of the Tariff Act of 1930, as amended;

(2) And shall use the said wool or hair in its imported or any other form in the manufacture of the articles enumerated in paragraph 1101 of the Tariff Act of 1930, as amended, in the manner provided for in the said paragraph, as amended, and in accordance with the regulations thereunder;

(3) Or shall submit proof in the manner prescribed by the said regulations that such wool or hair in its imported or any other form has been transferred to another manufacturer, processor, or dealer who has accepted responsibility under his bond to insure that the merchandise so transferred shall be used only in the manufacture of the said enumerated articles;

(4) And shall submit all reports, proof, and abstracts required by law or regulations within the time specified and in the manner provided for therein;

(5) And shall, if any of the said wool or hair in its imported or any other form shall be used or transferred for use otherwise than in the manufacture of the articles enumerated in paragraph 1101 of the Tariff Act of 1930, as amended, in violation of the first condition of this obligation, pay all duties which are required under the provisions of the said paragraph 1101, as amended, to be collected on the wool or hair in its imported or any other form so used or transferred;

(6) And shall, with respect to any wool or hair in its imported or any other form which, while it remains charged against this bond, shall be used or transferred for use otherwise than in the manufacture of the enumerated articles, in violation of the first condition of this obligation, pay all penalties which are required by the said paragraph 1101, as amended, to be collected if the said principal fail to report such use or transfer within the 30-day period specified in the said paragraph 1101, as amended, in the manner prescribed in the regulations thereunder;

Then this obligation shall be void; otherwise it shall remain in full force and effect.

It will be noted that in paragraph (1) of the bond the condition of the obligation does not state that the bound principal *insures that the merchandise chargeable against the bond shall be used only in the manufacture of the articles enumerated in paragraph 1101 (b)*. However, since the law in accordance with which the bond was executed is specifically referred to in the bond, it is an integral part thereof, and is just as binding as though *insurance* as to the proper use or transfer for use were contained in paragraph (1) in so many words. *U. S. v. Johnson*, 51 F. (2d) 312; *New Britain Lumber Co. v. American Surety Co. of New York*, 154 A. 147, 113 Conn. 1; *People ex rel. McLaughlin, Director of Agriculture v. G. H. Cross Co. et al.*, 198 N. E. 356, 361 Ill. 405, affirmed *Hartford Accident & Indemnity Co. v. Illinois ex rel. McLaughlin, Director of Agriculture*, 298 U. S. 155.

Since the statute here constitutes a part of the bond in the same manner as though incorporated therein, the bond must be so construed. There can be no question that the clear wording of the statute requires that the merchandise conditionally free of duty, in order to retain that status, must be insured by the bonded party against a use or transfer for use prohibited by the statute.

In the state of facts here, the condition of the bond was violated and appellant was therefore properly chargeable with the payment of duty when the yarn was used or transferred for uses as above set forth. The statute is clear and specific in fixing responsibility for the payment of duty, not on the owner or possessor of the goods, *but upon the party bound to insure the proper use or transfer for use of the goods.*

While we do not deem it necessary in construing paragraph 1101 (b) to resort to congressional history, an examination thereof confirms our conclusion. For the reasons hereinbefore given, the judgment of the lower court is *affirmed.*