(No. 32584.—
SAMUEL GADLIN, doing business as Gadlin's Currency Exchange, Appellant, *vs.* THE AUDITOR OF PUBLIC ACCOUNTS *et al.,* Appellees.

*Opinion filed January 22, 1953.*

RUSSELL J. TOPPER, of Chicago, for appellant.

IVAN A. ELLIOTT, Attorney General, of Springfield, CHARLES H. THOMPSON, of Harrisburg, and BROOKS, BEARDSLEY & FRIEDLANDER, of Chicago, (WILLIAM C. WINES, BEN SCHWARTZ, GRENVILLE BEARDSLEY, and HIRSCH E. SOBLE, all of Chicago, of counsel,) for appellees.

Mr. JUSTICE MAXWELL delivered the opinion of the court:

This suit was instituted in the superior court of Cook County by Samuel Gadlin, doing business as Gadlin's Currency Exchange, against the Auditor of Public Accounts of the State of Illinois, seeking judicial review of an administrative decision of the Auditor denying the plaintiff a license to operate a currency exchange at a specific location in the city of Chicago. Erie Currency Exchange, Inc., and others were, upon their petition, given leave to appear as intervenor defendants. The superior court rendered judgment affirming the order of the Auditor and the appeal therefrom was taken directly to this court under the provisions of the Currency Exchange Act and because the constitutionality of a section of that statute is involved.

Plaintiff filed an application for a license to operate a currency exchange at 340 West Chicago Avenue, Chicago, and satisfied all requirements of the Currency Exchange Act, (Ill. Rev. Stat. 1951, chap. 16½, par. 34.1 *et seq.,*) except section 4.1 thereof which was added in 1945 and amended in 1951. Section 4.1, as amended, provides as follows:

"Upon receipt of an application for a license for a community currency exchange, the Auditor shall investigate the need of the community for the establishment of a commu-

nity currency exchange at the location specified in the application.

" 'Community,' as used in this Act, means a locality where there may be or can be available to the people thereof the services of a community currency exchange reasonably accessible to them. If the issuance of a license to engage in the community currency exchange business at the location specified, will not promote the convenience and advantage of the community in which the business of the applicant is proposed to be conducted, then the application shall be denied."

Plaintiff urges that section 4.1 is unconstitutional on the grounds that it is an unreasonable exercise of the police power, that it contravenes the due process clauses of the Federal and State constitutions, that it violates the separation and distribution of governmental powers and the provisions of articles II, IV, V and VI of the Illinois constitution, since it is an unwarranted delegation of legislative and judicial authority to an administrative agency, and that it violates section 22 of article IV of the Illinois constitution as an attempt by the General Assembly to grant special privileges and franchises to individual corporations.

Since this is a judicial review under the Administrative Review Act, no evidence was taken by the trial court. The complaint waived the filing of a transcript of the evidence taken before the hearing officer, and, at the request of plaintiff defendant included the findings and decision of the Auditor in his answer. The plaintiff does not contend that such findings were contrary to the evidence and they stand admitted for the purpose of this appeal.

Briefly, the facts are as follows: The location sought to be licensed is less than a mile north and two blocks west of the northwest corner of Chicago's loop; it is largely an industrial area containing many large manufactories and warehouses; a substantial number of the businesses pay their employees by cash or furnish check-cashing facilities

by armored truck or otherwise; the area contains many old rundown residential properties some of which are vacant and others have been razed; there are five licensed currency exchanges, a U.S. post office and a national bank located within one-fourth mile of the proposed location, one of which exchanges is within one-half block and another is operating at a loss because of a depreciating volume of business; within one-half mile there are fourteen currency exchanges operating; and an exchange formerly in business at the same location closed in 1950 because its operation was unprofitable.

Various private persons, some of whom resided or were employed within one-fourth mile, testified that they made use of facilities similar to those applied for, that they found the existing exchanges convenient and accessible and that they had no difficulty in obtaining currency exchange services.

It is not contended, nor does it appear, that the following findings of the Auditor were arbitrary or unreasonable: that there exist in the area reasonably accessible currency exchanges; and that there presently exists no need for an exchange at the proposed location. The sole and only question therefore, is whether section 4.1 of the Act is constitutional.

The first contention of the plaintiff is that section 4.1 of the Currency Exchange Act is an improper and unreasonable exercise of the police power by the legislature. The right of the legislature to regulate currency exchanges has been passed upon by the court in the case of *McDougall* v. *Lueder,* 389 Ill. 141. The precise question raised here was not there involved since section 4.1 was subsequently added to that act.

The provisions of the entire act must be read together to determine whether the section in question will promote, or bears substantial relation to, the public health, safety, morals and common welfare. Section .01 dealing with the

community currency exchange business, reads in part, "The General Assembly has found and declares * * * that it is affected with a public interest and should be licensed and regulated as a business affecting the convenience, general welfare, and economic interest of the people of this State; * * * that the number of community currency exchanges should be limited in accordance with the needs of the communities they are to serve, and in accordance with the provisions of this Act; * * *." Other sections of the act provide for a hearing, judicial review and the right of appeal.

Plaintiff stresses the rather narrow view that section 4.1 presupposes that where a community is served adequately any additional exchanges cannot add to its convenience and advantage and that if additional ones cannot add to convenience and advantage of a community already adequately served, they are automatically injurious to the public to a degree sufficient to warrant their exclusion by legislative mandate. Section 4.1 does not prohibit private individuals from establishing and operating a currency exchange business not detrimental to the public, but it does provide a means to insure safe financial practices. The limitation of licenses is merely incidental to the regulation of such business.

While the figures as to number, volume of business and ratio of capital investment are not in the record, they are included in the published reports and public records of the Auditor of Public Accounts. We take judicial notice of such public records. (*Scofield* v. *Board of Education,* 411 Ill. 11.) In 1951 the number of licensed exchanges in Illinois was 597, of which 584 were located in Cook County. The volume of orders issued in that year was over 400 million dollars while the average capital investment was only $9450. For the same year the surety bonds required by the Act represented a coverage of only 79.5 per cent of the average liability. It is evident that during the peak

periods of each year, when orders are not cleared rapidly, large amounts of funds are inadequately protected.

It is true that we have held that legislative determination that regulations are needful is not conclusive nor unlimited and in order to be imposed must bear some definite, substantial relation to the public health, safety, morals or public welfare. (*Zadworny* v. *City of Chicago,* 380 Ill. 470; *Klein* v. *Department of Registration,* 412 Ill. 75.) On the other hand, we have said that it is a question for legislative determination whether an evil exists and what means should be adopted to prevent it, and its acts will not be interfered with unless they are clearly in violation of some constitutional limitation. (*Stewart* v. *Brady,* 300 Ill. 425.) The legislative finding is entitled at least to great respect. (*People* v. *Chicago Transit Authority,* 392 Ill. 77.) Nothing in the record indicates that there was no factual justification for this legislation and it has not been shown that there was no room for a legitimate difference of opinion concerning the conditions which prompted it. Where there is room for such a legitimate difference the courts will not investigate the facts for the purpose of determining whether the declaration was warranted by the facts. (*People* v. *Price,* 257 Ill. 587.) All presumptions are in favor of the constitutionality of legislation once it becomes the law of the State, and all reasonable doubts must be resolved in its favor. *People ex rel. Royal* v. *Cain,* 410 Ill. 39.

The unrestricted issuance of licenses in a community to the point of saturation would tend to decrease the net earnings of each exchange to the point of insolvency of one or more of the exchanges with the inevitable result of losses to the public. We are of the opinion that section 4.1 constitutes a valid exercise of the police power and that its provisions bear a substantial relation to the public safety and financial security.

It is next argued that section 4.1 is, in the use of the terms "convenience," "advantage," and "need of the com-

munity," uncertain, vague and indefinite and that it contravenes the due process clauses of the Federal and State constitutions and violates the provisions of the Illinois constitution for the separation and distribution of the governmental powers.

While the legislature, in section 4.1, defined the word "community," it did not attempt to define the words "convenience" or "advantage," nor the phrase "need of the community." No Illinois case comes to our attention where the precise language was in question.

In the case of *Jaffe* v. *Cruttenden*, 412 Ill. 606, a section of the Illinois Securities Law exempted from the operation of the statute the resale by a broker of a security acquired in the ordinary course of business. The acquisition and resale price are required to be "reasonably related" to the then current market prices. We there said: "Reasonableness is not, under all circumstances, a prohibited statutory standard * * *. Nor do the cases relied upon by plaintiff preclude the legislative use of the word 'reasonable' in all fields other than those in which its use was sanctioned at common law. * * * That marginal cases may present difficulties does not mean that the language is too ambiguous to define the duties and conditions involved."

In *People ex rel. Barrett* v. *Logan County Building and Loan Ass'n*, 369 Ill. 518, where the phrase, "fraudulent, illegal, discriminatory or unsafe manner" was used in connection with the statute which authorized the Auditor to appoint a receiver and proceed to dissolve an association, we held the language to be sufficiently definite.

In *Zurn* v. *City of Chicago*, 389 Ill. 114, we rejected the contention that the Neighborhood Redevelopment Corporation Law failed to fix sufficient standards and constituted an unconstitutional delegation of legislative power. The language there used required determination of certain facts by the Redevelopment Commission: *i.e.*, "Slum and Blight Area," the development "designed to effectuate the

public purposes" of the act, the plan not to cause "undue hardship" to the families in the area to "such a degree as to outweigh the public use," and not to "displace the predominant primary racial group."

It is difficult to give the words in question in this case a clearer meaning than they carry without definition. The duty imposed upon the Auditor by section 4.1 is to determine two facts. He has no discretion over the conditions, nor is he permitted to create or modify what they are. He merely ascertains and declares what the facts are. We believe that the provisions of section 4.1 are sufficiently definite and that the words in question are not so vague as to delegate legislative authority to the Auditor.

We have said many times that an administrative officer empowered to issue and revoke licenses to engage in a business or profession necessarily exercises quasi-judicial powers, but such exercise is incidental to the duty of administering the law relating to the regulation of a particular business or calling and does not constitute the exercise of judicial power within the prohibition of the constitution. (*Department of Finance* v. *Gandolfi,* 375 Ill. 237; *People ex rel. Rice* v. *Wilson Oil Co.* 364 Ill. 406; *People ex rel. Mosco* v. *Service Recognition Board,* 403 Ill. 442.) The principles enumerated in those cases are applicable to the instant case.

Lastly, it is contended by the plaintiff that section 4.1, in so far as it protects existing currency exchanges against new entrants into the community, violates the constitutional prohibition against laws which grant any special or exclusive privilege, immunity or franchise. The point is made that the legislature has not taken similar action to prevent too many banks, too many building and loan associations or too many savings and loan associations.

The court takes judicial notice of the fact that the growth of currency exchanges has been extremely rapid, while the number of banks and loan associations has re-

mained fairly static. Furthermore, banks and loan associations are subjected to much more rigid supervision, they are required to publish statements of assets and liabilities, most of them are members of the Federal Deposit Insurance Corporation and, in the case of banks, a much larger capital investment is required before they can receive a charter. The legislature is under no duty to extend regulatory measures to all fields in which there may be abuses and it may confine its restrictions to those classes of cases where the need is deemed to be the clearest. (*People ex rel. McLaughlin* v. *G. H. Cross Co.* 361 Ill. 405; *People* v. *Loitz,* 412 Ill. 313.) There is a distinct difference between currency exchanges on the one hand and banks on the other. They are members of different classes of financial institutions. We have often said that laws are not to be regarded as special or class legislation merely because they affect one class and not another, provided they affect all members of the same class alike. *Kloss* v. *Suburban Cook County Sanitarium Dist.* 404 Ill. 87; *Keig Stevens Baking Co.* v. *City of Savanna,* 380 Ill. 303.

By inference plaintiff questions the validity of section 25 of the Currency Exchange Act, which provides that all currency exchanges in existence on the date of the passage of the act shall be approved as to location by the Auditor. Similar provisions in other licensing statutes have been held to be a reasonable basis for classification. (*Elliott* v. *University of Illinois,* 365 Ill. 338; *City of Aurora* v. *Burns,* 319 Ill. 84.) We see no merit to the contention that special privilege has been extended to those currency exchanges in business at the time of the enactment of section 4.1.

The judgment of the superior court of Cook County is affirmed.

*Judgment affirmed.*