(No. 34315.—■■■■■■■■■■)

THILLENS, INC., Appellee, *vs.* LLOYD MOREY, Auditor of Public Accounts, *et al.,* Appellants.

*Opinion filed May 23, 1957—Rehearing denied September 19, 1957.*

SCHAEFER, J., took no part.
DAVIS and HERSHEY, JJ., dissenting.

LATHAM CASTLE, Attorney General, of Springfield, WILLIAM C. WINES, and BEN SCHWARTZ, of counsel,) for appellants Lloyd Morey *et al.*, and CHARLES H. THOMPSON, of Harrisburg, C. WAYLAND BROOKS, HIRSCH E. SOBLE, and THOMAS H. FITZGERALD, all of Chicago, for intervening appellants.

KIRKLAND, FLEMING, GREEN, MARTIN & ELLIS, and TENNEY, SHERMAN, BENTLEY & GUTHRIE, both of Chicago, (DAVID JACKER, HENRY F. TENNEY, GEORGES DAPPLES, and THOMAS J. KERWIN, of counsel,) for appellee.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

The Auditor and Attorney General of the State of Illinois together with the State's Attorney of Cook County, and certain currency exchanges as intervening defendants, have appealed directly to this court from a declaratory judgment of the circuit court of Cook County adjudging that the 1951 amendment to the Community Currency Exchange Act of 1943 (Ill. Rev. Stat. 1951, chap. 16½, pars. 30 *et seq.*) is invalid and unconstitutional as applied to plaintiff's business because it has no proper foundation in the police power of the State.

The constitutionality and validity of a State statute being the principal issue, the appeal properly comes direct to this court.

Plaintiff's complaint prayed a declaratory judgment declaring the 1951 amendment to the Community Currency Exchange Act void and unconstitutional and that the defendant public officials and the individual defendant currency exchanges, as representative of all other currency exchanges, be enjoined from exercising any of the rights, powers or duties conferred upon them respecting the enforcement of the amended act.

The 1951 amendatory act amended the title of the original Community Currency Exchange Act to read: "An Act in relation to the definition, licensing and regulation of Community Currency Exchanges and ambulatory currency exchanges, and the operators and employees thereof, and to make an appropriation therefor, and to provide penalties and remedies for violation thereof."

Section .01 of the amendatory act contains a finding and declaration by the General Assembly in reference to ambulatory currency exchanges as follows: "* * * that there has arisen also the ambulatory currency exchange business, as hereinafter defined in Section 1, which has engaged heretofore in unlicensed competition with the licensed community currency exchange business; that it is in the public interest to promote and foster the community currency exchange business and to assure the financial stability thereof; that the operations of the ambulatory currency exchange business have enabled it to appropriate the most profitable function of the community currency exchange business without incurring the expenses of, or subjecting itself to the regulations imposed upon the community currency exchange business, and to secure thereby an unfair advantage; that there has resulted therefrom an unfair and ruinous competition to the licensed community currency exchange business; that the nature of the ambulatory currency exchange business is such as to render it hazardous and dangerous to the public safety and security; that the public welfare demands that no ambulatory currency exchange business should be operated without a license, or otherwise than in accordance with the regulations provided in, or to be provided pursuant to this Act." Ill. Rev. Stat. 1951, chap. 16½, par. 30.

Section 1 of the amendatory act defines a community currency exchange as being "any person * * * engaged at a fixed and permanent place of business, in the business

or service of, and providing facilities for, cashing checks," and defines an ambulatory currency exchange as being "any person \* \* \* engaged in performing any one or more of the foregoing services, at any location other than that of a fixed and permanent place of business of his, their or its own." Section 1 also exempts from the operation of the act any party engaged primarily in a business of transporting for hire bullion, currency, securities, negotiable or non-negotiable articles, jewels or other property of great monetary value, and who, in the course of such business, and only as an incident thereto, cashes checks or other evidences of money directly for, or for the employees of and with the firms of and at a cost only to, the person or firm for whom the party is then actually transporting said property pursuant to a written contract for such transportation, and all incidents thereto. It also exempts any party engaged in the business of selling tangible personal property at retail who, in the course of such business, and only as an incident thereof, cashes checks or other evidences of money.

Section 2 of the amendatory act provides that no community currency exchanges or ambulatory currency exchange can engage in business without a license from the Auditor of Public Accounts; that no license shall issue for the conduct of an ambulatory currency exchange on any public street or highway; that an ambulatory currency exchange shall secure a license for the conduct of its business at each and every location served by it as provided in section 4; and that violators of said section shall suffer prescribed penalties.

Section 3 of the act provides what operations a community or ambulatory currency exchange may or may not engage in.

Section 4 provides for written applications for licenses and certain information relative to the applicant's history; that applications for both types of exchanges for a license

shall be accompanied by an investigation fee of $25 for the cost of investigating the application; that an annual license fee of $50 shall be paid by a community currency exchange; that an ambulatory currency exchange shall pay an annual license fee of $10 for each and every location served by it; that an approved applicant shall not be required to pay the initial investigation fee of $25 more than once; and that with respect to each location the applicant shall file with the Auditor a letter or memorandum under oath signed by the owners or authorized representative of the place of business where service is to be rendered, containing a statement that such service is desired and that the person signing is authorized so to do.

Section 10 specifies certain qualifying conditions precedent to the issuance of a license and provides that no application shall be denied by the Auditor without notice and hearing and the right of review in accordance with section 22.01 of the act.

Section 14 provides for the payment of annual license fees and the filing of annual license bonds, reports and insurance policies as and if required by the act on or before November 15 annually.

Section 15 provides that no licenses shall be revoked by the Auditor without notice and hearing and right of review in accordance with section 22.01.

Section 16 provides for annual reports to the Auditor and requires that the Auditor shall, at least once a year, inspect the locations served by an ambulatory currency exchange for the purpose of determining whether such exchange is complying with the provisions of the act in such location served, and provides for *subpoena* powers of the Auditor and examination fees with a maximum fee of $20 per day.

Section 19.1 requires an ambulatory currency exchange actively engaged in any place or station on a location licensed under the act and cashing checks other than from an

armored vehicle to provide at least one armed guard at each such place in addition to the person cashing checks. Section 19.2 requires that before any license or renewal of license is issued for any location served by an ambulatory currency exchange, such applicant shall file a surety bond in the penal sum of $2000 conditioned that the licensee serving the location shall comply with section 19.1 of the act and shall pay all lawful claims for money or other property loss or bodily injury suffered in the course of and by reason of a holdup at such location that shall occur at the time or times when such licensee failed to comply with said section 19.1, said bond to run to the Auditor for the benefit of any person or persons who establish a lawful claim or claims as aforesaid. The applicant is given an option to file annually in lieu of separate bonds for each location a blanket bond not to exceed $100,000 on the same conditions.

Section 28 provides that if an ambulatory currency exchange does not engage in selling or issuing money orders in its own name, then sections 5, 6, and 7 of the act are not applicable to it.

Section 29 declares the operation of any unlicensed exchange or the unlawful conduct of any licensed exchange constitutes unfair competition with licensed and legally operated currency exchanges doing business in the same community and authorizes such licensed and legally operating currency exchanges doing business in the same community to apply for and obtain an injunction restraining such unfair competition.

Section 30 of the act provides that if any provision of the act is declared unconstitutional the unconstitutionality of such provision shall not invalidate the constitutional provisions of the act.

Plaintiff's complaint in substance alleges that it is an Illinois corporation organized in 1949 for the purpose, among others, of engaging in the business of transporting

currency and cashing payroll checks issued to employees in industrial and business concerns, only on the premises of employers issuing such checks, and only pursuant to contract between the company and the employers. The corporation succeeded to the assets and operation of the business previously conducted by the principal stockholder continuously and without interruption from August, 1934, to the date of filing the complaint. The plaintiff's sole business consists of transporting currency belonging to the plaintiff to the premises of business establishments pursuant to contract and the cashing of payroll checks of employees on the premises of the employer. With the exception of two small similar businesses and isolated transactions conducted by Brinks, the plaintiff is the only owner and operator of a payroll check cashing business in Cook County and the only such business of substantial size which will be materially and adversely affected by the amended act. The plaintiff owns and operates a fleet of 19 armored trucks. In most instances payroll checks are cashed at windows from within the armored trucks parked on premises of the employer. In all cases where checks are otherwise cashed the currency is transported by plaintiff's cashier under the protection of armed guards provided by the plaintiff or the employer. The plaintiff does not engage in any other business nor cash anything other than payroll checks issued by an employer who has contracted for such services. Plaintiff's services are not available to the general public or to the community neighborhood. The plaintiff does not issue money orders, accept money for deposit or for payment of utility bills, nor accept items for collection. All payroll checks are purchased outright by the plaintiff with its own funds. Its sole income is from a nominal service charge based upon the size of the check cashed. Plaintiff cashes checks for more than 75,000 employees weekly, averaging in excess of $4,750,000 a week. During the fiscal year ending March 1, 1951, plaintiff cashed 3,874,194 checks in

exchange for $234,877,000. Any loss which occurs is borne by the plaintiff and no loss can accrue to any others. A very substantial part of plaintiff's business is conducted in the industrial and outskirt areas where there is no practical or convenient means by which payroll checks can be cashed except for plaintiff's services. The principal competitors of plaintiff's business are taverns. During the 17 years of operation by plaintiff and its predecessor no person had been injured or damaged as the result of any holdup or other criminal action directed at any of plaintiff's employees. The business of plaintiff and its value would be destroyed in the event of the suspension of its services for even a short period of time. The complaint alleges that the 1951 amendment to the Community Currency Exchange Act is unconstitutional as a violation of section 2 of article II of the Illinois constitution providing that no person shall be deprived of life, liberty or property without due process of law, and that said amendatory act is an unreasonable, discriminatory and capricious exercise of the police power insofar as it relates to plaintiff's business.

After a temporary injunctional order was affirmed by the Appellate Court in *Thillens, Inc. v. Cooper*, 345 Ill. App. 145, the defendants filed answers which, .in addition to denying the unconstitutionality of the amendatory act and plaintiff's right to an injunction, specifically denied the following facts alleged in the complaint: that plaintiff's sole business consisted of the transporting of currency belonging to the plaintiff to premises of business establishments pursuant to contract and the cashing of payroll checks of employees on the premises of the employers; that any loss which occurs is borne by the plaintiff and can accrue to no others; that a very substantial part of plaintiff's business is conducted in industrial and outskirt areas where there is no practical or convenient means by which payroll checks can be cashed except by plaintiff's services; that the principal competitors of plaintiff's business are tav-

erns; that during 17 years of operation no person was injured or damaged as the result of any holdup or other criminal action directed at any of plaintiff's employees; and that the business of plaintiff and its value would be destroyed in the event of the suspension of its services for even a short period of time. As to the remaining allegations of the complaint the answer merely stated that the defendants had no knowledge sufficient to form a belief as to the truth thereof.

Thereafter the trial court granted plaintiff's motion for judgment on the pleadings and entered a declaratory judgment granting the relief prayed, basing its decision primarily upon the opinion of this court entered in the case of *People ex rel. Barrett* v. *Thillens,* 400 Ill. 224. Such declaratory judgment entered on the pleadings by the trial court was reversed by this court in *Thillens, Inc.* v. *Hodge,* 2 Ill.2d 45, and the cause was remanded with directions to overrule the motion for judgment on the pleadings and to require the introduction of evidence in order to resolve the factual issues raised by the pleadings before deciding the legal questions presented.

On remandment the trial court heard extensive and voluminous testimony and evidence and entered its judgment declaring the amended act unconstitutional as applied to plaintiff, from which this appeal is taken. Such judgment made the following specific findings among others: "The plaintiff engaged in the business of cashing payroll checks on the premises of various employers, there being instances, however, of the cashing of payroll checks outside such premises and on the public streets while plaintiff was engaged in promotional services;" "payroll checks are cashed from tables in plants in some instances, in cages in plants in other instances, and from the windows of armored trucks on the premises of plants in other instances;" "in most instances where the check cashing is not done from the armored truck it is done by an armed employee of

Thillens with no additional guard assigned;" "in 17 years of operation no customer of plaintiff or its predecessor has been injured or damaged as a result of a holdup, albeit there have been holdups in one or two of which an employee of plaintiff was injured. During the same period of time there have been intermittent holdups of the Community Currency Exchanges;" "there is immediate competition between Thillens and some currency exchanges but there is no evidence that that competition is ruinous;" "the rates charged for cashing checks by plaintiff were uniformly less than the rates charged by currency exchange operators;" "there was evidence of competition by Thillens at four community currency exchanges out of 607 licensed exchanges;" "the plaintiff is in unlicensed competition with the Community Currency Exchange business;" "the operation of the plaintiff's being limited to the cashing of checks only concerns itself with what is the most profitable function of the community currency exchange business;" "there has been no unfair or ruinous competition to the licensed community exchange business, and during the years of the plaintiff's operations the community currency exchange business has from year to year increased in size. Neither the industry nor any individual exchange has been rendered unprofitable as a result of the plaintiff's operation;" "plaintiff failed to prove its allegation that its principal competition was from taverns located in the vicinity of the various industrial plants at which plaintiff makes its stops;" "plaintiff generally does not provide an armed guard in addition to an armed cashier when checks are cashed in plants at its customers' establishments;" "there have been several occasions when plaintiff's employees have been held up at plants even though armed guards have been present;" "there is no need of any restriction on the conduct of plaintiff's business on public streets or highways;" "there is nothing in the provision for an armed guard to benefit the public. On the contrary the presence of such a guard may

insure the exchange of gunfire and the possibility of injury therefrom;" "there is nothing in the nature of the plaintiff's business which justifies its regulation and the requirement of the statute of obtaining licenses and the payment of license fees;" "plaintiff is the only company materially and adversely affected by the act." In a memorandum opinion attached to the declaratory judgment the trial court relied principally upon and quoted extensively from the prior opinions of this court in *Thillens, Inc.* v. *Hodge, 2* Ill.2d 45, and *People ex rel. Barrett* v. *Thillens,* 400 Ill. 224.

The contentions by appellants on this appeal that the amendatory act is constitutional may be summarized in substance as follows: That the legislative judgment is conclusive unless clearly shown to be arbitrary, capricious and unrelated to the public good; that the trial court's finding that the plaintiff's unlicensed competition was not unfair or ruinous was contrary to the uncontradicted evidence, and the legislation is a constitutional inhibition of "unfair and ruinous competition" which the legislature has found and declared to exist; that the trial court's finding that the amendment exceeded the legislature's police power was contrary to the uncontradicted evidence, which established the dangerous and hazardous nature of plaintiff's business.

The substance of plaintiff's contentions in support of the declaratory judgment may be summarized as follows: The reasonableness and propriety of regulation and its application is a judicial and not a legislative function; plaintiff's competition is neither unfair nor ruinous; plaintiff's business is neither dangerous nor hazardous; the designation of a business by the legislature as being affected with the public interest does not in fact make it so; and the statute is void as an unlawful classification, a denial of equal protection of the laws, an unwarranted discrimination, and an invalid exercise of police power.

The opinion of this court in *Thillens, Inc.,* v. *Hodge,* 2 Ill.2d 45, points out the nature of the decision of this

court in *People ex rel. Barrett* v. *Thillens*, 400 Ill. 224, distinguishes the issues there presented from those issues now before the court, and states in a rather comprehensive manner the standards and criteria to be followed in resolving issues such as are now presented to the court.

As stated in the case of *Thillens, Inc.* v. *Hodge,* all presumptions are in favor of the constitutionality of legislation once it becomes the law of the State, and all reasonable doubts must be resolved in its favor. The party attacking the validity of a statute has the burden of proving that it is clearly arbitrary and has no foundation in the police power for its existence. Where the reasonableness of the legislation is fairly debatable the courts will not interfere with the legislative judgment and will not substitute their judgment for that of the legislative department. Such principle does not foreclose the courts from exercising their judicial function, and it is true that the reasonableness and propriety of regulation and its application must be decided by the court from the facts and circumstances in evidence. (*Midland Electric Coal Corp.* v. *County of Knox,* 1 Ill.2d 200.) However, the trial court has no power to judge in accordance with its judgment on conflicting evidence but its duty is only to decide whether the question is fairly debatable. If fairly debatable it should not investigate further. (*Gadlin* v. *Auditor of Public Accounts,* 414 Ill. 89.) It makes no difference that substantial evidence on both sides may be in conflict or that the facts may be disputed or their effect opposed by argument and opinion of serious strength. It is not for the courts to arbitrate in such contradictions of evidence. (*Stewart* v. *Brady,* 300 Ill. 425; *Rams-Head Co.* v. *City of Des Plaines,* 9 Ill.2d 326; *City of West Frankfort* v. *Fullop,* 6 Ill.2d 609.) From the findings of fact specifically made by the trial court that the plaintiff cashed checks on the public streets while engaged in promotional services, that there have been holdups in which individuals have been injured, that there is no armed

guard other than the armed cashier himself when cashing checks outside of an armored truck, that there is competition between the plaintiff and currency exchanges and that plaintiff charges uniformly less than the rates charged by currency exchange operators, that plaintiff's business concerns itself only with the most profitable function of community currency exchange business, and from other facts in evidence whereby it appears that the plaintiff itself recognizes the element of public danger from its operations by carrying very large insurance policies indemnifying the public against loss from holdup, and by the extensive protection furnished its own employees and its property, the use of armored cars, extensive firearm training, and advance notification of police as to its routes and cashing operations, there seems to be ample evidence from which the legislature could reasonably conclude that the plaintiff's operation directly affected the public safety and the use of public highways. From the facts before the court it seems amply clear that the legislature was not unreasonable, arbitrary or capricious in determining that the nature of the plaintiff's business was such as to render it hazardous and dangerous to the public safety and security, warranting police regulations.

As to the question of whether legislative protection of one business from competition by another is valid in and of itself, we are not called upon to consider. As announced in *People ex rel. Barrett* v. *Thillens,* 400 Ill. 224, it is a firmly settled constitutional principle that every citizen is guaranteed the right to engage in any lawful, useful and harmless business or trade, and it is not within the constitutional authority of the State legislature, in the exercise of police power, to interfere with the rights of the individual to carry on a legitimate business when no interest in the public safety, welfare or morals is damaged or threatened. Although the decision in *People ex rel. Barrett* v.

*Thillens,* 400 Ill. 224, was unquestionably correct, yet, in the instant case we have a situation of a business which damages or threatens to damage the public safety. In *Gadlin* v. *Auditor of Public Accounts,* 414 Ill. 89, this court upheld the constitutionality of section 4.1 of the Currency Exchange Act, also adopted in 1951, limiting the issuance of community exchange licenses to those which would promote the advantage of the community, and said that the unrestricted issuance of licenses in a community to the point of saturation would tend to decrease net earnings to the point of insolvency of one or more exchanges with the inevitable result of losses to the public. By the same token and same reasoning the legislature would have the same right to regulate the unrestricted cashing of payroll checks where the unlicensed competition emanates from an admittedly dangerous and hazardous business.

A large discretion is necessarily vested in the legislature to determine not only what the interests of public safety and welfare require but what measures are necessary to secure such interests. (*Zelney* v. *Murphy,* 387 Ill. 492.) Whether the enactment is wise or unwise; whether it is based on sound economic theory; whether it is the best means to achieve the desired results, and whether the legislative discretion within its prescribed limits should be exercised in a particular manner are matters for the judgment of the legislature, and the honest conflict of serious opinion does not suffice to bring them within the range of judicial cognizance. *People* v. *Saltis,* 328 Ill. 494; *Stewart* v. *Brady,* 300 Ill. 425.

Plaintiff further argues that the amendatory act in question is unconstitutional and void because the exemptions in section 1 of the act hereinbefore set forth are unlawful classifications and deny the equal protection of the law to plaintiff. The exemptions referred to are those exempting from the act (a) those engaged primarily in the transporta-

tion for hire of currency, *etc.*, who as an incident thereto cash checks, *etc.*, with the funds of, and at a cost only to the employer, pursuant to written contract; and (b) those in the retail business, who only as an incident thereto, cash checks, *etc.*

The general legal principles to be applied to this particular question are rather well settled. The equal-protection clause goes no further than the invidious discrimination. (*Williamson* v. *Lee Optical of Okla., Inc.,* 348 U.S. 483, 99 L. ed. 563, 75 S. Ct. 461.) The court in *Lindsley* v. *Natural Carbonic Gas Co.* 220 U.S. 61, 55 L. ed. 369, 31 S. Ct. 337, succinctly stated the rules for testing a discrimination as follows:

"1. The equal protection clause of the Fourteenth Amendment does not take from the State the power to classify in the adoption of police laws, but admits of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis and therefore is purely arbitrary. 2. A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety or because in practice it results in some inequality. 3. When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. 4. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary." The foregoing principles are of equal application in the State of Illinois. (*Stewart* v. *Brady,* 300 Ill. 425; *Krebs* v. *Board of Trustees,* 410 Ill. 435; *Union Cemetery Ass'n* v. *Cooper,* 414 Ill. 23.) This court has uniformly recognized that a class cannot be created by arbitrary declaration of the law-making powers and that only those classifications are valid which are based upon reasonable grounds of distinction with reference to the object of

the legislation. (*Wedesweiler* v. *Brundage,* 297 Ill. 228; *Berry* v. *City of Chicago,* 320 Ill. 536; *Chicago Park District* v. *Canfield,* 382 Ill. 218.) At the same time, this court further recognizes that the legislature is not bound to extend its regulation to all cases which it might possibly reach. It may confine its restrictions to those classes where the need is deemed to be the clearest. *Stewart* v. *Brady,* 300 Ill. 425; *People* v. *Saltis,* 328 Ill. 494; *Baim* v. *Fleck,* 406 Ill. 193.

It is apparent from the act in question that the purpose of the legislature in adopting the act was to protect the public when dealing with institutions, both ambulatory and otherwise, primarily engaged in the business of furnishing check cashing and currency exchange services. From what has heretofore been noted, the legislature was not unreasonable or arbitrary in determining that such business required regulation by the State under its police power to protect the public from certain evils. The exemptions complained of refer to businesses not primarily engaged in currency exchange or check cashing, but refer to businesses whose primary business is something different, *viz.,* transportation of another's valuables for hire, or retail sales. In each type of exempted business it is recognized that incidentally checks may be cashed. Under the applicable rules, however, we must conclude that the legislature exempted from the application of the act certain businesses with different characteristics predicated upon a reasonable belief that the evils at which the statute was directed did not exist in sufficient degree in the exempted classes to warrant regulation. From the facts introduced in evidence, we cannot say the legislature acted arbitrarily or unreasonably in providing the exemptions attacked.

A similar contention was made in *McDougall* v. *Lueder,* 389 Ill. 141, with reference to the exclusion of check cashing by retail stores. Such contention was overruled by this court in that opinion, *subsilentio,* the opinion being devoted to other issues presented. Among such other issues was

the question whether or not the specific exemption from the statute by name of the Western Union, Postal Telegraph Company and the American Express Company constituted an unlawful classification and denial of equal protection. In the *McDougall case* we held such exemption constitutional. Since the submission of this case to the court, the United States Supreme Court in *Morey* v. *Doud,* 1 L. ed. 2d 1485 (June 24, 1957) has held such exemption unconstitutional as violating the equal-protection clause. In so holding, they declined to remit the cause to the Illinois courts for a determination whether such exemption could be severed from the act under its severability clause, but held that this court in the *McDougall case* ruled that such exemption could not be severed. Such conclusion of the United States Supreme Court is premised on *dicta* contained in the opinion by this court in the *McDougall case* that "The General Assembly would surely never have passed the act if they had thought that the said companies would be made subject to its rules and regulations." Since this court there held that the exemption complained of was constitutional, no question of severability of such clause was presented for decision, the language referred to was unnecessary and was clearly *dicta,* and the case constitutes no decision by this court that such clause was not severable. Since the question of severability is clearly recognized as a question of State law in the *Morey case, Dorcky* v. *Kansas,* 264 U.S. 286, 68 L. ed. 686, 44 St. Ct. 323; and *Chas. Wolff Parking Co.* v. *Court of Industrial Relations,* 267 U.S. 552, 69 L. ed. 785, 45 S. Ct. 441, that question remains unresolved by this court. Subsequent to the announcement of the United States Supreme Court decision in *Morey* v. *Doud* on June 24, 1957, the General Assembly of this State has adopted and the Governor has signed a bill purportedly amending the Currency Exchange Act by eliminating the exemption of the American Express Company money orders

therefrom. (70th General Assembly, H.B. 1031.) Without passing on the validity or effect of such purported amendment, we must accept such amendatory act as a positive and irrebuttable indication that the Illinois legislature would have passed the Currency Exchange Act even though the named companies were subject to its application, notwithstanding this court's prior *dicta* in the *McDougall case.* Such being the fact, such exemption clause should be considered severable (*Myers* v. *Krajefska,* 8 Ill.2d 322) with no effect on the validity of the remainder of the Currency Exchange Act even though such clause is invalid under the United States Supreme Court decision in the *Morey case.*

In our opinion the legislature was acting within the scope of its constitutional limitations in adopting the legislation here challenged, and this court cannot judicially state that it was acting in an arbitrary, capricious or unreasonable manner. Consequently, the judgment of the trial court will be reversed.

*Judgment reversed.*

Mr. JUSTICE SCHAEFER took no part in the consideration or decision of this case.

Mr. JUSTICE DAVIS, dissenting:

If an examination of the provisions of this amendatory act raised only questions of the wisdom of its expressed social or economic policy, or of its choice of methods to implement such policy, I would concur with the court and defer to such legislative determination. However, the facts of record concerning the plaintiff's business, and the impact of this enactment thereon, require that this court exercise its time-honored judicial function of reviewing legislative enactments to determine whether they are arbitrary, capricious and unreasonable. (*Midland Electric Coal Corp.* v. *County of Knox,* 1 Ill.2d 200; *Giebelhausen* v. *Daley,* 407 Ill. 25; *McDougall* v. *Lueder,* 389 Ill. 141; *Marbury* v.

*Madison,* 1 Cranch 137.) Under our form of government, the legislative, executive, and judicial branches all serve as guardians of our liberties, and each branch has the duty to check and balance the unauthorized act of the other. Our constitution did not harness a three-horse team to work in unison, but rather, gave each branch a separate task with the expectation that where one branch errs, the other will, within constitutional limitations, repair such error.

A complete reading of the act before us reveals a singular purpose to deprive plaintiff of its present competitive position. The legislative finding and declaration of policy, in the amendment, boldly announces a plan to protect community currency exchanges from competition by ambulatory currency exchanges. But the legislature did not attempt to achieve this purpose by the regulation of fees or charges for the services rendered. Rather, it sought to burden the plaintiff by the imposition of multitudinous license fees, investigation fees, examination fees, surety bonds, armed guard, supervisory and report and record requirements. It is inescapable that these requirements are not designed to protect the public, but to increase plaintiff's cost and facility of doing business. The legislature is without authority to act as a handicapper in the race for commercial success, as it has here done.

The court grounded its opinion solely on the legislative determination that the operations of the plaintiff are dangerous to public safety. The record, in my opinion, reveals something quite different; it conclusively discloses that in seventeen years of operation, the general public has suffered neither physical injury, nor economic harm. But even assuming that the activity of plaintiff in using its own money to cash payroll checks is hazardous *per se,* a conclusion I believe unreasonable, the supervision of the Auditor of Public Accounts, the plethora of fees and charges, and the burdensome requirements of supervision, bonds, records

and reports have no conceivable relation to this hazard. Nor does the requirement of an armed guard, without heed to whether plaintiff is cashing checks for $100 or $100,000, have such relation.

It is naive to regard this amendment as anything more than an ill-considered legislative attempt to place a millstone of regulation around the neck of a legitimate business, under the guise of the exercise of the police power. This court still gives lip service to its decision in *People ex rel. Barrett* v. *Thillens,* 400 Ill. 224, as "obviously correct," but the present decision reduces the statements of constitutional law there announced to pious and hollow generalities, which will fall before the art of any skillful legislative draftsman. I would here reaffirm the more salutory doctrine that "If it is claimed that the statute or ordinance is referable to the police power, the court must be able to see that it tends, in some degree, toward the prevention of offenses or the preservation of the public health, morals, safety or welfare. It must be apparent that some such end is the one actually intended and that there is some connection between the provisions of the law and such purpose. If it is manifest that the statute or ordinance has no such object, but, under the guise of a police regulation, is an invasion of the property rights of the individual, it is the duty of the court to declare it void." (*People ex rel. Barrett* v. *Thillens,* 400 Ill. 224, 235; also see: *Midland Coal Corp.* v. *County of Knox,* 1 Ill.2d 200; *People* v. *Carolene Products Co.* 345 Ill. 166; *People* v. *Wilson,* 249 Ill. 195.) The validity of the Community Currency Exchange Act as applied to community exchanges was based on various fiduciary activities in which the plaintiff does not engage, such as handling other people's money, issuing drafts, selling money orders, acting as bailee in payment of bills, taking other people's money and purchasing paper. (*McDougall* v. *Lueder,* 389 Ill. 141.) While extensive regulations of

such activities may be warranted, the same regulation of the plaintiff, which merely cashes checks with its own funds, without any fiduciary relationship with the public, is clearly unreasonable. Cf. *People ex rel. Barrett* v. *Thillens*, 400 Ill. 224.

The amendatory act has the further vice of lack of uniformity in exempting express companies from like regulation. While such classification was justified in *McDougall* v. *Lueder*, 389 Ill. 141, it can have no rational basis in the amendatory act under consideration, the validity of which is sustained solely on the ground that the business is hazardous to public safety. If the plaintiff's activities are hazardous to public safety, then similar activities of the express companies would have an equal element of hazard, and their exemption from the onerous provisions of the act would render it unconstitutional. (*Berry* v. *City of Chicago*, 320 Ill. 536, 542; *Wedesweiler* v. *Brundage*, 297 Ill. 228, 236; *Millett* v. *People*, 117 Ill. 294, 301 and 302.) The act discriminates against the plaintiff and excepts express companies performing similar services from its operation without the justification of genuinely different characteristics in the business involved, and in so doing violates the equal-protection clause of both the State and Federal constitutions. *Morey v. Doud*, 354 U.S. 457, 1 L. ed.2d 1485.

I therefore voice my dissent to an opinion which tends to vest in the legislature the unfettered power, by finding and declaration, to destroy harmless competition under the guise of police regulation.

Mr. JUSTICE HERSHEY concurs in the foregoing dissenting opinion.