PAUL STARCEVICH, JR., *et al.*, Petitioners, *v.* THE POLLUTION CONTROL BOARD *et al.*, Respondents.

Third District   No. 78-28

Opinion filed November 19, 1979.—Rehearing denied December 28, 1979.

BARRY, J., dissenting.

Gary E. Barnhart, of Claudon, Lloyd & Barnhart, Ltd., of Canton, for petitioners.

Ronald Weber, of Froehling, Taylor & Weber, of Canton, for petitioner Four Nine Four Corporation.

William J. Scott, Attorney General, of Chicago (Patrick J. Chesley, Stephen Grossmark, and William J. Barzano, Jr., Assistant Attorneys General, of counsel), for respondents.

Mr. PRESIDING JUSTICE STOUDER delivered the opinion of the court:

The petitioners, Paul and Mildred Starcevich, Paul's IGA Foodliner, Inc., Four Nine Four Corporation, and Eleanor Leeper, were individually fined by the Pollution Control Board. They were found guilty of causing or allowing the construction and operation of a sewer requiring a permit without obtaining such permit in violation of Rules 951(a) and 952(a) of the Pollution Control Board Rules and Regulations, chapter 3: Water Pollution, and section 12(b) of the Illinois Environmental Protection Act (Ill. Rev. Stat. 1975, ch. 111½, par. 1012(b)). The petitioners appeal from the Board's order finding a violation.

In 1973, Paul's IGA Foodliner, Inc., a retail grocery store located in Farmington, Illinois, constructed an eight-inch sewer line connecting the store to the city of Farmington's sewer system. The connection was made at a manhole (the "Vernon Street manhole") located at the end of the Farmington sewer line. At the time this sewer was constructed, no permit was required from the Environmental Protection Agency (hereafter referred to as the EPA) under Rule 951(b)(2) of the Pollution Control Board. Rule 951(b)(2) exempts from the construction permit requirement any sewer which serves a single building and discharges less than an average of 1500 gallons of domestic sewage per day.

On June 6, 1975, Paul's IGA Foodliner sold some property located to the west of the store to Jerry Freirich, a representative of the Kansas City real estate development firm of Block & Company.

In the spring of 1976, the petitioner Four Nine Four Corporation's Ben Franklin Store was constructed on the land that was the subject matter of the Paul's IGA Foodliner/Freirich contract. On April 5, Lyle Ray, an EPA inspector, had a telephone conversation with Freirich and informed him that a construction permit would need to be issued from the EPA if a sewer line was to be built connecting the Ben Franklin Store to the eight-inch line coming from Paul's IGA Foodliner. This telephone call was followed up by a letter (dated May 27, 1976) to Freirich from the EPA in which he was told that "if any additional buildings are to be attached to the service line which serves the IGA building, a sewer extension permit will need to be issued by this Agency." A sewer extension was constructed without a permit from the Ben Franklin Store to Paul's IGA line, for which Paul's IGA was paid $1,000. Neither Starcevich, Freirich, Paul's IGA Foodliner, Inc., nor Four Nine Four ever applied for the necessary construction permits or a variance from the permit requirement. Pierson-Pyle Contractors, the firm building the Ben Franklin Store, applied to the EPA for a permit on May 24, 1977, but was denied a permit by letter on June 10.

Petitioner Eleanor Leeper owned a parcel of land west of the Ben Franklin Store. On September 9, 1976, she began construction of the Shad Hill Complex, a marketplace for arts, crafts, and antiques. In response to her inquiry concerning the necessity of a sewer construction permit for her proposed building, the EPA informed her by letter dated May 28, 1976, that she could not tap onto the Paul's IGA line. The letter stated that no tap could be made because, as the IGA line was installed without a permit, "it can only be presumed that one was not required, which means the sewer is designed and intended to serve only one building, * * *." Although she was informed that no permit would be required to connect to a public sewer if her sewer was to serve only her facility and handle less than 1500 gallons of sewage a day, no permit would be issued to her if one

was necessary because of the Farmington system's "inadequate treatment capability." However, she was advised that she could seek a variance if in fact she did need a permit.

After investigating several possible ways in which she could dispose of the Shad Hill sewage and meeting with no success, Leeper eventually made a sewer connection with Paul's IGA sewer line, and paid Paul Starcevich $1,000 for permission to make the connection. Mrs. Leeper testified at the Pollution Control Board's hearing that she told her engineers to prepare a variance request for her, but she did not know if a petition for a variance was ever filed. Like the other co-petitioners, Mrs. Leeper never sought a permit.

After a consolidated hearing on each claim of violation before the Pollution Control Board an order was entered finding each of the petitioners guilty of violating Board Rules 951(a), 952(a), and section 12(b) of the Environmental Protection Act (Ill. Rev. Stat. 1975, ch. 111½, par. 1012(b)) in that they caused or allowed the construction or operation of a sewer without first obtaining the requisite construction permit. On appeal from this order the principal issue raised is whether they are guilty of violating the rules and regulations as promulgated by the Pollution Control Board.

Since it is conceded that no permits or variances were issued the question remains as to whether a permit was required; in particular, whether the exemption described in the rule is applicable to the circumstances of these petitioners. That part of the rule describing the exemption is Rule 951(b)(2) of the Pollution Control Board and it provides:

"(b) Construction Permits shall not be required for the following:
* * *

(2) Any * * * , sewer, * * * designed and intended to serve a single building and eventually discharge less than an average of 1500 gallons per day of domestic sewage."

According to the Board, the Ben Franklin Store and the Shad Hill Complex would be within the scope of Rule 951(b)(2) if each had constructed a separate sewer line to the "Vernon Street manhole." Hence, lack of compliance is not predicated upon the petitioners' failure to comply with the single-building requirement, since according to the Board, the exemption under Rule 951(b)(2) would have been applicable had petitioners changed the method by which their sewage was discharged. Rather, lack of compliance arises from the manner attachment was made to each of the petitioners' single buildings, a condition not specified in the rule creating the exemption. The departure from the conditions creating the exemption in the rule is evidenced by the only

finding in the Board's order relating to the violation, as may be seen by the following portion of the Board's order.

> "The contention by the Respondents that the additional connections fall under the Rule 951(b)(2) exemption is wholly unfounded. Once those connections were made, the eight-inch line became a sewer extension rather than a service connection and the exemption no longer applied."

Lyle Ray, a witness for the agency, defined a sewer connection as a hookup between a privately owned sewer pipe and a municipally owned sewer and defined a sewer extension as hooking together one private sewer pipe with another sewer pipe. The difficulty is that the rules and regulations do not support Ray's testimony or the Board's position.

■■ ■ The terms "sewer extension" and "service connection" are not defined anywhere in the rules and regulations, nor is mention made of public versus private sewers. The terms of the exemption provided by Rule 951(b)(2) do not suggest how or in what manner the sewer of a single building is to be attached. Indeed, the rule does not indicate where the sewer of a single building is to be attached or whether the attachment should be to "public sewers" or to "private sewers." The rule simply provides an exemption from permit requirements for single buildings with 1500 gallons or less of domestic discharge. Since Rule 951(b)(2) contains none of these limitations or restrictions on the exemption granted to single buildings, as it would have to have in order to support the Board's position, we can only conclude the petitioners fall within the purview of the exemption. We do not question the Board's authority to adopt rules and regulations along the lines suggested by its order or the testimony of Lyle Ray, but having failed to do so, it can not now say that petitioners do not come within the limits of the exemption for reasons that were unspecified in the rule at the time of the alleged violation.

The argument of the Board that exempting these users would be contrary to the spirit and purpose of the regulations is without force. The circumstances of these petitioners are within the spirit and intent of the exemption, and while the Pollution Control Board may believe there should be no additional discharge of sewage into the system without approval, this view is contrary to the intent and language of the exemption. Where the discharge is small, as in the instant case, the exemption supports the conclusion that monitoring is unnecessary and of little benefit to the system as a whole. Applying the exemption to the petitioners in this case does not permit discharge in excess of that permitted by the exemption, since it is conceded not only that the discharge from each of the buildings is less than the 1500 gallons but also that the total discharge from all of the buildings is less than the amount

permitted. If, as we believe, the petitioners were exempt from the requirement of securing operational or construction permits, then it follows the Board erred in finding petitioners in violation of the rules.

For the foregoing reasons the order of the Pollution Control Board is vacated.

Order vacated.

ALLOY, J., concurs.

Mr. JUSTICE BARRY, dissenting:

I respectfully dissent. Not only does it seem obvious to me that each of the petitioners violated Rules 951(a) and 952(a) of the Pollution Control Board Rules and Regulation, ch. 3: Water Pollution, but in deciding that there was no violation the majority opinion avoids meeting what I, as well as the parties in this case, consider to be the main issue, *i.e.*, the constitutionality of Rules 951(a), 951(b)(2) and 952(a). Before dealing with the constitutionality of these particular rules, however, I will address the issue which the majority finds to be determinative.

Rules 951(a) and 952(a) of the Pollution Control Board state:

"Rule 951(a) and 951(b)(2):

(a) No person shall cause or allow the construction of any new treatment works, sewer, or wastewater source or cause or allow the modification of any existing treatment works, sewer, or wastewater source without a Construction Permit issued by the Agency, except as provided in Paragraph (b).

(b) Construction Permits shall not be required for the following:

*  *  *

(2) Any treatment works, sewer, or wastewater source designed and intended to serve a single building and eventually treat or discharge less than an average of 1500 gallons per day of domestic sewage.

Rule 952(a):

(a) No person shall cause or allow the use or operation of any treatment works, sewer, or wastewater source for which a Construction Permit is required under Rule 951 without an Operating Permit issued by the Agency, except for such testing operations as may be authorized by the Construction Permit."

The rules define a "modification" as follows:
> "Rule 104, Definitions: 'Modifications':
>> (1) Any physical change in a treatment works which involves different or additional processes or equipment or which increases or decreases the capacity or efficiency of the treatment works; or
>> (2) Any change in the number or location of points where effluent is discharged, directly or indirectly, to the waters; or
>> (3) Any change in any components of a sewer system which alters the quantity or wastewater capable of being conveyed, or which increases or decreases the quantity of wastewater capable of being discharged at overflow or bypass structures; or
>> (4) Any increase in quantity or strength of a discharge from any wastewater source, unless such increase does not exceed an upper limit specifically allowed by an existing permit granted by the Agency and does not involve any additional contaminants contained in standards set by this chapter that are not itemized and approved in an existing Agency permit; * * *."

There can be no doubt that initially the eight-inch sewer line connecting Paul's IGA Foodliner to the Vernon Street manhole was intended to serve only that building and intended to discharge an average of less than 1500 gallons of domestic sewage per day. Therefore, no construction permit was required for the construction of this sewer pursuant to the exemption of Rule 951(b)(2). However, once the Ben Franklin and Shad Hill connections were made, the petitioners were either guilty of causing (in the case of Four-Nine-Four and Eleanor Leeper) or allowing (in the case of the Starceviches and Paul's IGA Food-liner, Inc.) the modification of an existing sewer line without a permit as required by Rule 951(a). It seems clear that the petitioners' activities constituted a modification as that term is defined in Rule 104(3). By causing or allowing the construction of sewer extensions to the Paul's IGA line, the petitioners did in fact change the "components of a sewer system which alters the quantity of wastewater capable of being conveyed" under Rule 104(3). Despite the petitioners' claim that Paul's IGA sewer line was not a "sewer system," that sewer is clearly a "component" of the entire Farmington system. The Ben Franklin and Shad Hill connections to the Paul's IGA line constituted a change in that component which altered the amount of effluent capable of being conveyed. Consequently their actions were a "modification" within Rule 104(3), and the causing or

allowing of this modification in the absence of a construction permit was a violation of Rules 951(a) and 952(a).

The majority takes the position that the petitioners are not guilty of violating Rules 951(a) and 952(a) because they come within the limits of the construction permit exemption of Rule 951(b)(2). This conclusion results from too narrow a reading of the exemption. I agree that each sewer built in this case was initially designed and intended to serve a single building and discharge less than 1500 gallons of domestic sewage per day. However, once the Ben Franklin and Shad Hill sewer extensions were constructed, the Paul's IGA line no longer served a single building, but three buildings. The net result of the majority's opinion is to effectively read out of the exemption the single-building requirement and leave as the sole requirement the 1500-gallon-per-day limitation. Such a result was obviously not the intention of the Pollution Control Board when it promulgated the rule, nor does it serve the purposes of the Environmental Protection Act. The single-building provision in the exemption was included because it is unlikely that the effluent discharged from such a structure would exceed 1500 gallons of sewage per day, and because it eliminates the need of receiving and processing many, many unnecessary permit applications. The single-building requirement thus decreases both the probability of a sewage source exceeding the 1500-gallon limitation and the necessity of monitoring the amount of sewage discharged. These purposes are defeated by the decision rendered by the majority. As I read the majority opinion, so long as the sewer is attached to a single building which might discharge an average of less than 1500 gallons of sewage a day, the permit exemption of Rule 951(b)(a) applies, even though that sewer line in fact serves two, three, or more buildings. Consequently, the single-building provision becomes meaningless. It can no longer serve as assurance that the 1500-gallon limitation will not be exceeded because once an attachment is made to a single building, the sewer could serve any number of buildings or hookups. In the absence of a viable single-building requirement, the burden placed upon the EPA to discover violators and enforce the Act, as well as the likelihood of a sewer discharging more than 1500 gallons of sewage a day, is markedly increased.

I do not believe that the Pollution Control Board intended the single-building requirement to be meaningless. The Board intended it to act both as an effective limitation upon the amount of domestic sewage discharged into the environment, and as a limitation upon the number of permit applications which the Agency is required to process. The permit exemption of Rule 951(b)(2) is distinctly limited to those sewers discharging an average of less than 1500 gallons of sewage a day *and* serving a single building. With the exception of the original eight-inch line

from Paul's IGA, none of the additional sewer hookups meet the exemption. The Board was correct in finding that the petitions had violated Rules 951(a) and 952(a).

In finding no violation of Rules 951(a) and 952(a) the majority failed to address the issue raised by the petitioners concerning the constitutionality of those rules. Because both the petitioners and the EPA considered this to be the main issue in this case, a full discussion of this important constitutional issue is warranted.

The petitioners contend that Rules 951(a) and 952(a) violate equal protection clauses of both the Illinois Constitution (Ill. Const. 1970, art. I, §2) and the United States Constitution (U.S. Const., amend XIV) because they are arbitrary, unreasonable, and capricious. The petitioners point specifically to the single-building requirement of Rule 951(b)(2). The petitioners argue that this requirement for a permit exemption is violative of equal protection because it exempts from the permit requirement sewers intended to serve a single building that discharges less than an average of 1500 gallons of domestic sewage daily, while requiring a permit for the construction of sewers serving more than one building, even though the sewage discharge may be well below the 1500-gallon limitation. As a result of the single-building requirement for a permit exemption, the petitioners contend that emphasis is incorrectly placed upon the source of the effluent rather than the nature and quantity of the discharge to the detriment of the purposes of the Environmental Protection Act. In this case, for example, it may be that the combined sewage discharge from all three of the petitioners' businesses (Paul's IGA, Ben Franklin, and Shad Hill) amounted to less than average of 1500 gallons of domestic sewage per day (as the petitioners' evidence indicates), yet their construction of sewers without permit was found to be illegal due to their inability to meet the single-building requirement of Rule 951(b)(2). Petitioners make the point that had they each constructed separate sewer lines to the Vernon Street manhole, they would have qualified for the permit exemption, and it would have been theoretically possible for each of them to legally discharge slightly less than an average of 1500 gallons of domestic sewage per day—a total of almost 4500 gallons—into the already overtaxed Farmington sewer system. The petitioners argue that rules which allow the discharge of considerable amounts of sewage into a system barely able to function, but forbid the discharge of lesser and otherwise permissible amounts of sewage, are patently arbitrary, unreasonable, and inconsistent with the aims of the Environmental Protection Act.

Before administrative action taken under statutory authority will be set aside on equal protection grounds, it must be shown to be *clearly* arbitrary, unreasonable, or capricious (*Illinois Coal Operators Association*

*v. Pollution Control Board* (1974), 59 Ill. 2d 305, 319 N.E.2d 782). In *Thillens, Inc. v. Morey* (1957), 11 Ill. 2d 579, 594, 144 N.E.2d 735, 743, the Illinois Supreme Court, quoting from *Lindsley v. Natural Carbonic Gas Co.* (1911), 220 U.S. 61, 78-79, 55 L. Ed. 369, 377, 31 S. Ct. 337, recited the rules to be used in testing alleged discrimination under the equal protection clause:

" '1. The equal protection clause of the Fourteenth Amendment does not take from the State the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis and therefore is purely arbitrary. 2. A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety or because in practice it results in some inequality. 3. When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. 4. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary.' The foregoing principles are of equal application in the State of Illinois. (*Stewart v. Brady*, 300 Ill. 425; *Krebs v. Board of Trustees*, 410 Ill. 435; *Union Cemetery Ass'n v. Cooper*, 414 Ill. 23.)"

Accordingly, Illinois courts have held that in order to square with the equal protection clause, the classification under scrutiny must bear a " 'rational relation to the evil to be remedied' " (*Begich v. Industrial Com.* (1969), 42 Ill. 2d 32, 36, 245 N.E.2d 457, 459), but it is not necessary that the classification be "scientific, logical or consistent, provided it rests on a reasonable basis." (*Supervisors of County of Boone v. Village of Rainbow Gardens* (1958), 14 Ill. 2d 504, 513, 153 N.E.2d 16, 21.) In short, then, the task is to determine whether Rules 951(a), 952(a), and specifically the single-building requirement of Rule 951(b)(2) bear any reasonable relation to the purposes of the Environmental Protection Act.

Although I appreciate the logic of the petitioners' argument, I believe that none of the above rules violate either the State or Federal equal protection clauses. In regard to Rule 951(b)(2), it is true that the exemption applies to "single buildings" that discharge less than an average of 1500 gallons of domestic sewage a day. However, it is equally as true that the majority of "single buildings" which discharge less than 1500 gallons of sewage a day are single-family residences. This point was made by the Fifth District Appellate Court in the case of *People v. Keeven* (1979), 68 Ill. App. 3d 91, 385 N.E.2d 804, where the court upheld the constitutionality of the very Pollution Control Board rules before us

here. *Keeven* is unusual in that although the defendant did not challenge the validity of Rules 951(a), 952(a), and 951(b)(2), the trial court held that Rule 951 was "arbitrary, discriminatory, and unreasonable," and therefore violative of unspecified provisions of the Illinois and United States constitutions. Despite the failure of the defendant to file a brief on appeal, the court decided to consider the merits of the case. In reversing the trial court and upholding the constitutionality of the rules in issue, the court specifically stated that rule 951(b)(2) "is based on rational distinctions and directly aids in achieving the goals of the Act, the reduction and elimination of water pollution." (68 Ill. App. 3d 91, 102, 385 N.E.2d 804, 811.) In the process of reaching this decision, the court accepted plaintiff's contention that most "single buildings" are single-family homes.

I agree with the *Keeven* court's interpretation of the term "single building" as found in Rule 951(b)(2). I am aware of the argument that if the Board had intended for the construction permit exemption to apply to single-family homes served by sewers which discharge less than an average of 1500 gallons of sewage a day, it would have said "single family homes" and not "single buildings." Yet, to ignore the fact that the majority of single buildings discharging less than 1500 gallons of domestic sewage a day are indeed single-family residences is to ignore reality. Furthermore, to refuse to acknowledge this fact is to pay but lip service to the mandates of *Thillens, Inc. v. Morey*: When the classification in a law is questioned, "if *any* state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time law was enacted must be assumed." (Emphasis added.) 11 Ill. 2d 579, 594, 144 N.E.2d 735, 743.

As the *Keeven* case points out, the Board's decision to hinge the applicability of the permit exemption of Rule 951(b)(2) on whether or not the proposed sewer is intended to serve a single building (generally a single-family residence) is justifiable on several grounds. First, "[t]he type and amount of wastes generated by such structures is well established and does not vary significantly from one structure to another. * * *. [T]he same is not true for other structures such as apartment buildings, stores and industrial or commercial establishments where the volume and nature of waste may vary significantly from structure to structure." (68 Ill. App. 3d 91, 102, 385 N.E.2d 804, 811.) In addition, due to the fact that single-family residences generate little, if any, income, it would be unduly burdensome to compel the owner-occupier of every such structure to apply for a sewer construction permit in light of the small benefit to be gained from such a procedure. The permit exemption of Rule 951(b)(2) not only alleviates this burden of the owner-occupier of single-family homes, but also eases the administrative burden of the EPA as it greatly reduces the number of permit applications to be processed. I also note

that contrary to the petitioners' contention, the single-building requirement is not adverse to the purposes of the Environmental Protection Act because it does in fact act as a limitation on the amount of sewage discharged into the system. Under Rule 951(b)(2), the permit requirement is eliminated only if the proposed sewer is intended to discharge an average of less than 1500 gallons of sewage a day *and* it serves a single building. If the single-building requirement were to be stricken from the rule, qualification for a permit exemption would rest solely upon the quantity of the sources' sewer discharge. Because the quantity of discharge from any source is likely to fluctuate over a period of time, the 1500-gallon limitation could be easily exceeded unless the EPA constantly monitored every source for a rule violation. The single-building requirement not only greatly increases the likelihood that the 1500-gallon limitation will be adhered to (the sewage flow increase from a single building being less than the increase from several buildings), but also aids in the enforcement of the Act.

Although I feel that for these reasons alone the single-building requirement of Rule 951(b)(2) bears a reasonable relation to the purposes of the Environmental Protection Act and is not violative of equal protection, I am further convinced that petitioners have not made out a valid equal protection violation by the absence of any contention that the alleged discrimination was invidious. "The equal protection clause goes no further than the invidious discrimination." (*Thillens, Inc. v. Morey* (1957), 11 Ill. 2d 579, 594, 144 N.E.2d 735, 743.) In *Summers v. Illinois Commerce Com.* (1978), 58 Ill. App. 3d 933, 936, 374 N.E.2d 1111, 1113, the court said "[t]he application of the equal protection clause is limited to 'instances of purposeful or invidious discrimination rather than erroneous or even arbitrary administration of state powers.' (*Briscoe v. Kusper* (7th Cir. 1970), 435 F.2d 1046, 1052.)" (*Accord, Contemporary Music Group, Inc. v. Chicago Park District* (1978), 57 Ill. App. 3d 182, 372 N.E.2d 982.) In the absence of any proof that the discrimination against the petitioners by virtue of the existence of the single-building requirement in Rule 951(b)(2) was purposeful or invidious, I am of the opinion that the equal protection rights of the petitioners were not violated, that Rules 951(a), 951(b)(2) and 952(a) of the Pollution Control Board bear a reasonable relation to the purposes of the Environmental Protection Act, and that those rules are therefore consistent with the mandates of the State and Federal constitutions.

I would affirm the order of the Pollution Control Board.